EASLEY v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

Division One, December 22, 1892.

1. **Railroad**: NEGLIGENCE: ORDINANCE: LIGHT ON MOVING TRAIN: SPEED. It is negligence in a railway company to run its trains in a city in violation of an ordinance requiring light upon cars, etc., moving at night, and regulating their speed.

2. ——: ——: PUBLIC CROSSING: EVIDENCE. Where plaintiff was injured by negligent operation of a train at a public crossing, it is not error to admit evidence that there was no light about the place. That fact was part of the *res gestæ* and otherwise relevant.

3. **Practice**: ADMISSION OF EVIDENCE. Where evidence is admitted in chief which is relevant in rebuttal, its admission out of order is not prejudicial error.

4. **Railroad**: PUBLIC CROSSING: USER. A public crossing over a railway may be established by sufficiently long use.

5. **Practice**: INSTRUCTIONS. Instructions should be read and construed together.

6. **Contributory Negligence.** Certain instructions on contributory negligence reviewed and held correct.

7. **Railroad**: GOING ON TRACK: NEGLIGENCE. One coming upon a railway is bound to use ordinary care to observe train movements thereon. Failure to "look and listen" may amount, in some circumstances, to a want of such care. The standard by which action in that regard is to be measured is that degree of care, which, in the opinion of the court, should characterize a person of ordinary prudence in the same situation.

8. **Practice**: DISQUALIFICATION OF JUROR: WAIVER. Where a juror during the argument of a case announced to counsel in court that he had visited the scene of the accident in litigation; but no objection to his participation in further proceedings was made until after verdict; an objection then was too late.

9. ——: MISCONDUCT OF JUROR. Misconduct of a juror cannot be established by testimony of third parties to his admissions of such misconduct.

10. Practice in Supreme Court: VEXATIOUS APPEAL: DAMAGES. Damages for vexatious appeal will not be awarded where the questions of law involved are fairly debatable.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

(1) The trial court should not have permitted the plaintiff to testify that there was no light at the alleged crossing where he was injured. There was no ordinance requiring a light to be kept at that point, and, therefore, the defendant was not required to keep one there. (2) The testimony of the plaintiff to the effect that none of defendant's employes came to him after he was hurt, was not proper. It had no legitimate bearing on any issue in the case, and was introduced for the purpose of creating prejudice against the defendant. The fact that it was improperly admitted raises a presumption of prejudice to defendant. (3) The court erred in permitting the plaintiff to show how the crossing in question had been used several years before the accident. The testimony should have been confined to the time of the accident, or so recently before the accident as to raise a presumption that same state of affairs continued. *Ely v. Railroad,* 77 Mo. 34; *Hipsley v. Railroad,* 88 Mo. 348. (4) The court should not have permitted the plaintiff to ask defendant's engineer on cross-examination whether he regarded the point in question as a public crossing. The opinion of the engineer, whatever it may have been, could not change the facts, and this

question put to the engineer was calculated to operate prejudicially to defendant. (5) The question of plaintiff's contributory negligence was not properly submitted. The court did not define what was meant by the term "without fault." Defendant was entitled to its instruction number 4, to the effect that the absence of a light at the crossing where plaintiff claims to have been injured, required of him a higher degree of care. Defendant was also entitled to have its instruction number 6 given as asked, and the modification made by the court only tended to make the meaning of the instruction difficult of comprehension by the jury. The law requires a party about to cross railroad tracks to look and listen, and, if by so doing he could discover approach of train, and he failed to do so, he cannot recover, and the defendant was entitled to have the court instruct the jury to that effect. *Moberly v. Railroad*, 98 Mo. 187. (6) The fact, that a number of the jurors during the progress of the trial visited the locality where the accident occurred, for the purpose of inspecting the same, was of itself sufficient to entitle defendant to a new trial. *Ottman v. Railroad*, 32 Kan. 419; *Stampofski v. Steffens*, 79 Ill. 303; Thompson on Trials, sec. 2605, p. 1969, and cases there cited. (7) The verdict was so clearly in conflict with the testimony in the case that the conclusion that the jurors were influenced by passion or prejudice is irresistible. In such case the trial court should set aside the verdict; and, if it refuse to do so, its judgment should be reversed by this court.

*Boland & O'Grady* and *Geo. N. Elliott* for respondent.

(1) Whether or not the crossing, at the time of the accident, was lighted artificially is as material and com-

petent as the question of it then being day or night.
The evidence admitted has no reference to any duty of
appellant, either under ordinance or in the exercise of
ordinary care, to have maintined a light there.
Appellant's third instruction properly presented the
law to the jury on this point.  (2) The testimony as
to whether or not appellant's trainmen who were on
the train which did the injury came to plaintiff while
he was lying injured at the crossing, is competent to
show whether or not the train was moving slowly over
the crossing and stopped soon after, or moved rapidly
on, westward.  (3) In proving that the public crossing
existed by prescription, it was not only competent but
necessary to show that it had been so used for the last
ten years.  Appellant's citations in this connection are
wholly inapplicable. *State v. Proctor*, 90 Mo. 334;
*State v. Bradley*, 31 Mo. App. 318; Elliott on Streets
& Roads, p. 138.  (4) The objection by appellant
that respondent's instructions did not properly present
the question of contributory negligence to the jury is
not well taken.  In the first place, contributory negli-
gence was pleaded by appellant.  It devolved upon
appellant to prove it and to ask for proper instruction
of the jury upon the point.  If appellant failed to do
this at the trial, it cannot now be heard to complain.
*Johnson v. Railroad*, 96 Mo. 340; *Tetherow v. Rail-
road*, 98 Mo. 74; *People v. Ahern*, 29 Pac. Rep. (Cal.)
49; *Guano Co. v. Tillery*, 14 S. E. Rep. (N. C.) 639.
The words, "without fault on his part," are plain
terms used in their ordinary meaning, and no
further definition or explanation was really necessary.
*Cottril v. Krum*, 100 Mo. 397; *Holland v. McCarty*, 24
Mo. App. 112.  By respondent's fifth instruction con-
tributory negligence is clearly and fully defined from
his standpoint; and by appellant's sixth (modified)
and seventh instructions it is clearly and fully defined

from appellant's standpoint, and these instructions cover all points of the evidence in the case relating to contributory negligence. *Haniford v. City of Kansas*, 103 Mo. 172. Appellant's fourth instruction, which was refused, is objectionable because it singles out one or two facts alleged to be in evidence, comments upon them and applies the rule of a higher degree of care thereunder to respondent and not to appellant. *Jones v. Jones*, 57 Mo. 138; *State v. Smith*, 53 Mo. 267; *McClure v. Ritchey*, 30 Mo. App. 445; *Copp v. Hardy*, 32 Mo. App. 588; *White v. Railroad*, 34 Mo. App. 78. The modification of appellant's sixth instruction was entirely proper. It is nowhere held that a person approaching and passing over a public railway crossing is required to exercise more than ordinary care. Appellant's case cited on this point clearly states this to be the rule. *Moberly v. Railroad*, 98 Mo. 183; *Kenney v. Railroad*, 105 Mo. 270; *O'Connor v. Railroad*, 94 Mo. 150. (5) Affidavits or admissions of jurors to impeach their verdict cannot be received. It is against public policy. *State v. McNamara*, 100 Mo. 100; *State v. Rush*, 95 Mo. 199; *Prattz v. Coffman*, 33 Mo. 72; Thompson on Trials, secs. 2603 and 2622. If the misconduct of a juror comes to the knowledge of the losing party before the case is finally submitted to the jury and such party fails to notify the court of it, or to interpose an objection at the time, he cannot after the verdict object. *State v. Forsythe*, 89 Mo. 667; *Lewis v. McDaniel*, 82 Mo. 577; *Nichols v. Metzger*, 43 Mo. App. 607; Thompson on Trials, secs. 904, 2605, 2613, 2620, 2622; *Stampofski v. Steffens*, 79 Ill. 303; 12 American & English Encyclopedia of Law, pp. 378, 379, 380. (6) Where an appeal taken is without merit, and has evidently been taken for vexation and delay merely, it is the rule of this court to affirm the judgment with ten per cent.

damage. *President Mining & Milling Co. v. Coquard,* 40 Mo. App. 40; *Taylor v. Scott,* 26 Mo. App. 249; *Cordell v. Bank,* 64 Mo. 600.

BARCLAY, J.—Plaintiff was run over by one of defendant's trains and lost a leg in consequence. The object of this action is to establish defendant's liability for that mishap because of its negligence in several particulars which will appear later.

The defense was a denial of the negligence alleged and a charge of contributory negligence on the part of plaintiff.

The points advanced for a reversal do not require a statement of the pleadings.

The case was tried before Judge Field and a jury, with the result of a verdict for plaintiff for $4,000, on which judgment was rendered, after ineffectual motions for new trial and in arrest. Defendant appealed.

Plaintiff's injury occurred about seven or eight o'clock P. M., November 22, 1888, at the crossing of Broadway and defendant's railway in Kansas City, Missouri. The local ordinances forbade the moving of any locomotive, car, etc., within the city at a greater speed than six miles an hour, and also required all moving cars, etc., between sunset and sunrise, to have at least one lamp, headlight or lantern conspicuously placed in front thereof, facing in the direction in which the same might be moving.

The crossing in question passes over defendant's tracks at a right angle. The general direction of defendant's line at that point is east and west. A small watch-house, for the use of a flagman, stands a few feet north of the tracks and west of the general line of travel on the roadway. The flagman stationed there is in the employ of the defendant. The passage-way over the tracks is of plank and wide enough for one wagon.

The plaintiff came upon the crossing going south, and noticed a train approaching from the west on the track farthest from him. He "flashed his eyes up and down the track before he made the start," to quote his own language; and then advanced, intending to await the passage of the train mentioned, when, just as he stepped upon the first (or northern) track, he was hit by a backing freight car moving westward at a speed of fifteen miles an hour, without a light or any signal of its approach. The night was dark and there were no lights about the crossing.

There was a conflict of evidence as to the precise spot where plaintiff received his injuries. Defendant's witnesses located it from fourteen to forty feet west of the crossing; but plaintiff's statement that it was upon the crossing was corroborated by the police officer who found him lying on the ground, and noticed the blood on the rail where the plaintiff was hit.

In this connection the court instructed that, if the jury believed that plaintiff was struck at a point west of the west line of Broadway, he was not entitled to recover, and they should find a verdict for the defendant.

So the result must be regarded as a finding that plaintiff's injury took place at the crossing.

Several errors are charged to the trial court, which will be considered.

I. Defendant complains of the admission of evidence that there was no light at the crossing when plaintiff was injured. Plaintiff's case, it is true, does not proceed on the theory of defendant's negligence in not illuminating the crossing. No such allegation appears. But the evidence referred to was relevant nevertheless, as part of the *res gestæ*, and as having a direct bearing on the issue of plaintiff's alleged contributory negligence.

It is the duty of a person who comes upon the

track of a railway to use ordinary care to observe the movement of trains thereon. Such care greatly depends on the circumstances of each case. Had plaintiff for example enjoyed a full view of his surroundings at the time of this accident, which a good light would have afforded, and had then failed to notice the train that struck him, undoubtedly his legal standing before us would be far more precarious than it is upon the showing that has been made.

The court gave defendant the full benefit of this distinction by instructing that no law or ordinance required defendant to light Broadway at that point or to keep a watchman there, and that the absence of either light or watchman was not negligence on defendant's part.

II. Defendant next objects to a question, "Did any of the trainmen come back to you there?" (referring to the plaintiff, just after he was run over); to which he answered, "No." But as defendant's train employes afterwards testified that they did come back to him, and his location then, with reference to the crossing, had a material bearing on the merits of the case, his testimony in contradiction of the employes was certainly relevant in rebuttal. Its admission out of order could not justly be regarded as prejudicial to defendant's substantial rights upon the merits. Revised Statutes, 1889, secs. 2100 and 2303.

III. There was no error in permitting plaintiff to prove how the crossing had been used during ten or twelve years before the accident.

The trial opened with a sharp issue of fact as to whether or not the crossing was of a kind to demand its recognition as a public one, in respect to the giving of a warning signal by bell or whistle. On this subject plaintiff's evidence tended to show the establishment there of a public crossing by long user. Before the

case closed, moreover, some of defendant's own witnesses corroborated plaintiff's contention on that point.

Those facts were certainly admissible, too plainly so to require further comment.

IV. Complaint is then made of one the instructions in respect to its reference to plaintiff's conduct. After requiring a finding of negligence on defendant's part, in omitting to signal for the crossing, it proceeds thus: "And if plaintiff was injured in consequence of such negligence and not for any fault of his own directly contributing to produce such injury," then the verdict should be for the plaintiff.

The criticism on this instruction is that it does not properly submit for decision the question of defendant's contributory negligence. But in that connection, the court gave another instruction as follows:

"Even though the jury should believe from the evidence that the plaintiff was not free from fault, it is not sufficient to defeat him in this case on that ground, unless he failed on that occasion to exercise such care as ought to be expected of an ordinarily prudent person under similar circumstances, and further, that such want of care directly contributed to produce such injury."

No objection is urged in this court to the instruction last quoted. We think it obviates any supposed obscurity there may be in that first mentioned.

We do not wish, however, to be understood as ruling that the one criticised would be erroneous, standing by itself, but merely that it is very plainly not so, when accompanied by such an explanation of its meaning as the other instruction gives.

Instructions should be read and construed together, and so construing these we consider that there is nothing of substance in defendant's objection to the first above noted.

V. Defendant next complains of the modification of one of its instructions.

The court added to it the words indicated below by italics, and gave it as thus modified, viz.:

"If the jury believe from the evidence that the plaintiff, *by the exercise of ordinary care*, could have seen or heard the train approaching, had he. looked or listened, in time to have avoided being injured, and that he failed to do so, then such failure on his part was such .negligence as would prevent a recovery, and your verdict should be for defendant."

What has been said in the first paragraph of this opinion need not be repeated in answer to this objection.

The plaintiff was bound to exercise ordinary care to avoid injury. If the request, as originally asked of the court, meant to impose on him a higher degree of personal duty than that, it was erroneous.

Failure to "look and listen" may sometimes amount to a want of ordinary care. In some circumstances, it may be so pronounced by the court, if the case is sufficiently plain; but the standard by which such action or non-action is to be measured is that degree of care which, in the opinion of the court, should characterize a person of ordinary prudence in the same situation.

That care obviously varies with the circumstances, and is generally to be ascertained by the aid of that common experience which the triers of fact bring to bear upon it. In the case at bar the court was right in leaving it to the jury to say whether plaintiff's conduct was or was not consistent with ordinary prudence.

These observations will also. apply to sustain the correctness of the ruling of the trial judge in refusing the following instruction which defendant asked, and on the refusal of which an error is here assigned, viz.:

"4. The court instructs the jury that" if they shall

believe from the evidence said street was not lighted at said point, and that no watchman was stationed there, those facts alone and of themselves would place a higher degree of care upon a person about to cross defendant's railroad at such point, and, if the plaintiff attempted to cross said tracks at said point without carefully looking and listening for the approach of trains, when to have done so he could have seen or heard the train approaching in time to have avoided the danger, then plaintiff is not entitled to recover, and your verdict must be for the defendant.''

VI. The most substantial objection urged here to the final action of the trial court relates to the conduct of the jury.

It appears that while counsel for defendant was addressing the twelve, after all the evidence was in, and the instructions had been given, one of the jurors interrupted him by stating that he (the juror) had been down to the point in question at noon that day (being the day after the trial commenced) and had seen for himself the watch-house in question and its location. The record adds that counsel continued speaking and ''during his argument to the jury he made no objection then nor afterwards to the further consideration of this case by the jury; and the case being thereafter finally submitted to the jury, the jury found the following verdict,'' etc.

The objection to the action of the juror appears to have been made in the trial court for the first time in the motion for new trial. We are of the opinion that it was then too late.

It was, no doubt, highly improper for the juror to make of his own motion a personal examination of the premises mentioned in evidence; but such action may have sprung from a mistaken enthusiasm in the interests of justice as he understood it, without any purpose

to violate the proprieties or the rules of law. It did not, of itself, indicate a bias or prejudice for or against either party, and may have been entirely innocent in its intent. His frank acknowledgment of the act appears to indicate that such was in fact its character.

As soon as defendant became aware of the misconduct, it should have objected thereto if it proposed ever to do so.

It could not justly be allowed, after full knowledge of the irregularity, to lie by and take the chances of a favorable result; and then, upon being disappointed in that regard, go back and interpose the unspoken exception. This exact point was expressly so decided in *Stampofski v. Steffens* 79, Ill. (1875), 303; and rulings involving the same principle have been made heretofore by this court. *Cochran v. Bartle*, 91 Mo. (1887), 636; *Grove v. Kansas City*, 75 Mo. (1882) 672.

VII. It was further sought by defendant to be proved that another juror had visited the spot in question during a recess in the trial. But the only testimony to that point consisted of affidavits to the effect that that juror had afterwards stated or admitted that fact to bystanders.

Jurors are not permitted to impeach their verdicts by their own affidavits of misconduct (*Pratte v. Coffman*, 33 Mo. (1862), 71) and still less by verbal admissions thereof to third parties. *State v. Rush*, 95 Mo. (1888), 199.

The testimony in the affidavit on this subject was simply hearsay; and, of course, incompetent.

VIII. These remarks dispose of all the objections assigned in this court to the conclusions reached on the circuit.

But the plaintiff insists that the appeal is so devoid of merit as to call for an award of ten per cent. damages. Revised Statutes 1889, sec. 2305. We do not agree to

that proposition. There certainly is enough in the case to justify asking a review of it by this court, as the above discussion of the points raised we think sufficiently shows.

The judgment is affirmed. SHERWOOD, C. J., BLACK and BRACE, JJ., concur.