BESSIE M. EVANS, Appellant, v. EDWARD A. KLUSMEYER.

Division Two, December 3, 1923.

1. **NEGLIGENCE: Automobile: Excessive Speed: Instruction.** The violation of an ordinance limiting the speed of an automobile in the business portions of the city to eight miles per hour is negligence *per se;* and where it is admitted, or established by evidence, that defendant, at the time he struck plaintiff as she was attempting to cross a street in a section of the city to which such ordinance applied, was driving his automobile at a speed of twenty miles an hour, plaintiff is entitled to an instruction authorizing a verdict in her favor, conditioned upon defendant's violation of said ordinance as the proximate cause of her injury and upon her exercise of ordinary care for her own safety; and the instruction, asked by plaintiff in this case and hypothesizing her right to recover for a violation of such an ordinance, correctly declared the law, and its refusal was error.

2. ————: **Instruction: Directly Contributing to Injury.** In an instruction telling the jury that the running of an automobile in excess of the maximum ordinance rate is negligence, and that "if you further find from the evidence that such negligence directly contributed to cause plaintiff's injuries," etc., the words "directly contributed to" are synonymous with proximate cause, and cannot reasonably be construed otherwise.

3. ————: **Humanitarian Rule.** Where defendant's testimony on cross-examination shows that after he saw plaintiff in a position of peril he could have stopped his automobile in time to have avoided injuring her if he had not been running it at a negligent speed, plaintiff is entitled to have her right to recover submitted under the humanitarian rule. Likewise, the driver of an automobile who, upon seeing a pedestrian about to cross a street at its intersection with another street, fails to slow down or give audible warning of his approach, is guilty of negligence; and testimony, either by defendant or others, that when he saw the pedestrian he had about reached the middle of the street crossing, that she was then distant about thirty-five feet, that he could have then stopped his machine, if then going at the rate of twenty miles an hour, within ten or twelve feet, or in a less space if going at a slower speed, that the ordinance fixed the maximum speed at eight miles

per hour, and that he continued going at the rate of twenty miles per hour, without blowing his horn and without head lights, until the automobile struck her, authorizes the submission of her right to recover under the humanitarian rule.

4. **JURY: Misconduct: Visiting Scene of Accident.** The misconduct of the jury in visiting the scene of the accident before making up their verdict, without the consent or knowledge of the court, while subject to judicial rebuke, is not, if established only by the affidavits of the jurors themselves, whether they be those who agreed to the majority verdict or those who did not so agree, a ground for a reversal of the judgment by the appellate court.

Appeal from St. Louis City Circuit Court.—*Hon. John W. Calhoun,* Judge.

REVERSED AND REMANDED.

*Charles E. Rendlen* and *John A. Hope* for appellant.

(1)  The ordinance limiting the speed of automobiles to eight miles an hour in business portions of the city has been upheld by this court.  City v. Hammond, 199 S. W. 411.  See, also: Varley v. Columbia Taxicab Co., 240 S. W. 218; Freeman v. Green, 186 S. W. 1166; City of Windsor v. Bast, 199 S. W. 722; Young v. Dunlap, 195 Mo. App. 119; Schinogle v. Baughman, 228 S. W. 897.  All the evidence, even defendant's own testimony, showed that the accident occurred in a business portion of the city and that defendant was running his machine at a speed greatly in excess of eight miles an hour.  Defendant himself testified that he came down Delmar at twenty miles an hour; that, on coming to, or within about five feet of, the west line of De Baliviere, with plaintiff seventy feet in front of him, he slowed down to fifteen miles an hour; and that he struck plaintiff running at a speed of twelve miles an hour.  Clearly, he was violating the ordinance.  It was negligence *per se.*  Varley v. Columbia Taxicab Co., 240 S. W. 222; Kelley v. Railroad, 75 Mo. 138; Bluedorn v. Railroad, 121 Mo. 258; Cabanne

v. Car Co., 178 Mo. App. 732; Raymen v. Galvin, 229 S. W. 749. Therefore, the learned trial judge erred in refusing plaintiff's first instruction, which was predicated on the ordinance. (2) The trial court then denied plaintiff the right to have the jury pass upon whether she was entitled to recover under "the humanitarian doctrine." This was set up in her petition. A good case on this phase of the matter was made out by the evidence, particularly defendant's own testimony on cross-examination, showing that after he saw plaintiff in the perilous position (due, as he claimed, to her own carelessness), he could have easily brought his automobile to a complete standstill at the crossing in question within less than the space of anywhere from forty to seventy feet, which intervened between the machine and her, and thereby have avoided injuring her. Despite these facts, the learned trial judge refused the instruction submitted by plaintiff on the humanitarian theory, although it is in approved form. Refusal of it was error. Deitring v. Transit Co., 109 Mo. App. 524, 548; Raymen v. Galvin, 229 S. W. 749. It is axiomatic that if the evidence on a defendant's side tends to support a theory upon which plaintiff can recover, then plaintiff is entitled to have that theory submitted to the jury in the instructions. Instructions should be predicated of all the issues raised by the pleadings and supported by the evidence. 11 Ency. Plead. & Prac. pp. 159, 169, 170, 181 and top 182. However lacking in support of the humanitarian theory plaintiff's evidence may have been, as the learned trial judge seemed to have regarded it, defendant's testimony supplied it. Plaintiff was entitled to have the full benefit of his testimony along this line, and the instruction (on humanitarian doctrine) should have been given. Clark v. Hammerle, 27 Mo. 55, 71 (see par. 3, Syllabus); Sawyer v. Drake, 34 Mo. App. 472, bot. p. 478 and top p. 479; Chappell v. Allen, 38 Mo. 213, 222; Roysdon v. Trumbo, 52 Mo. 38; Siegrist v. Arnot, 10 Mo. App. 209. (3) It necessarily follows that Instructions 8, 9, 10, 11 and 12, given

for defendant, were each erroneously given; this for the reason that they overlook the duty of defendant under the so-called humanitarian or last-chance doctrine.   Hovarka v. Transit Co., 191 Mo. 441, 456; Deitring v. Transit Co., 109 Mo. App. 524, 550.   (4)   The misbehavior of the foreman of the jury requires reversal of the judgment and a new trial.   See Peppercorn v. Black River Falls, 89 Wis. 38; 27 R. C. L. pp. 901-902; State v. Sanders, 68 Mo. 202, 205; Perry v. Bailey, 12 Kan. 539; Rush v. St. Paul Railroad, 70 Minn. 5; Twaddle v. Mendenhall, 80 Minn. 177; Pierce v. Brennan, 83 Minn. 422; Hefron v. Gallupe, 55 Me. 563; Harrington v. Worcester Railroad Co., 157 Mass. 579; Hempton v. State, 111 Wis. 127; Mattox v. United States, 146 U. S. 140, 36 L. Ed. 917; Stampofski v. Steffens, 79 Ill. 303; Winslow v. Morrill, 68 Me. 362; Helme v. Kingston, 8 Kulp, 221; State v. Perry, 121 N. C. 533; People v. Tyrell, 3 N. Y. Crim. Rep. 142; Eastwood v. People, 3 Park Crim. Rep. 25; Carside v. Ladd Watch Case Co., 17 R. I. 691; Woodbury v. Anoka, 52 Minn. 329; Bowler v. Washington, 62 Me. 302; Deacon v. Shreve, 22 N. J. L. 176; Tyrrell v. Bristow, 1 Alcock & N. 398; Ortman v. Union Pac. Ry. Co., 32 Kan. 419; Warner v. State, 56 N. J. L. 686.

*Taylor R. Young* and *Marsalek & Stahlhuth* for respondent.

(1)   Plaintiff's instruction submitting violation of the speed ordinance, was fatally defective in failing to require a finding that the violation was the direct cause of plaintiff's injury; the instruction merely requiring the jury to find ''that said negligence directly contributed to cause the injury.''   It confuses the idea of negligence of defendant as the sole cause, and contributory negligence of plaintiff.   In a case where the defense of contributory negligence looms large, as it does in this record, this instruction would have been especially wrong and harmful.   Lackey v. United Rys. Co., 288 Mo. 146; Hof v.

Transit Co., 213 Mo. 445; Krehmeyer v. Transit Co., 220 Mo. 639; Gale v. Mill Co., 159 Mo. App. 653; Wren v. Suburban Motor Transp. Co., 241 S. W. 469; Moon v. Transit Co., 247 Mo. 227, 233; Wilson v. Railways Co., 142 Mo. App. 676; Green v. Railways Co., 165 Mo. App. 14. (2) The court properly refused plaintiff's instruction on the humanitarian doctrine. The record is devoid of any evidence showing that the automobile could have been stopped and the accident averted, after it appeared that plaintiff was in danger. Lackey v. Rys. Co., 288 Mo. 143. Where the only evidence as to the distance within which the vehicle could be stopped is given by defendant, and his evidence shows that the vehicle was stopped as soon as possible after the plaintiff's danger became apparent, there is no case for the jury on the humanitarian doctrine. Wynn v. Undertaking Co., 274 Mo. 593; Bibb v. Grady, 231 S. W. 1020; Ward v. Fessler, 252 S. W. 670; Kalinowsky v. Viermann, 211 S. W. 723. The last part of the instruction in question states that negligence on plaintiff's part is not a defense, followed by a statement that the burden is on defendant to show that plaintiff was guilty of contributory negligence, and unless defendant has so proven, "then you should find for plaintiff on that point." The instruction was misleading and confusing in its reference to the burden of proof as to contributory negligence, and would have given the jury the impression that they could find for plaintiff, under the instruction, if they found merely that she was without fault. Rosemann v. United Rys. Co., 197 Mo. App. 337, 343. (3) Defendant's Instructions 8, 9, 10, 11 and 12, submitting the defense of contributory negligence were properly given. The evidence did not make out a case under the humanitarian theory. Authorities above. The court, at plaintiff's request, gave instructions which submitted alleged acts of primary negligence on defendant's part. Under these circumstances, defendant was entitled to have the jury instructed as to contributory negligence of plaintiff. Derrington v. City, 186 S. W. 561; Stevens v. City, 185 Mo. App. 464. (4) Defendant's

instruction did not enlarge the issue as defined to the jury in plaintiff's instructions, and, therefore, plaintiff is in no position to complain. Hay v. Worcester, 199 S. W. 139; Quinn v. Railroad, 193 S. W. 933; Harriman v. Dunham, 196 S. W. 445; Ingle v. Sov. Camp, 204 Mo. App. 597; Costello v. City, 280 Mo. 593; Vogelsang v. Bd. of Ed., 231 S. W. 645. (5) The action of the trial court in refusing to grant a new trial on account of the matter alleged in an affidavit of a juror who did not sign the verdict was proper. The affidavit could not be considered by the court for any purpose, under the law, and even if the affidavit had been proper evidence on the subject, the matter was one within the court's discretion. Roth v. City of St. Joseph, 180 Mo. App. 381; Williamson v. Mullins, 180 S. W. 395; Job's Admr. v. Weaver, 77 Mo. App. 671.

WALKER, J.—This suit was brought by appellant in the Circuit Court of the City of St. Louis for injuries received by her in being run down by an automobile driven by the respondent. Upon a trial there was a judgment for the respondent, from which an appeal was perfected to this court.

On the evening of November 27, 1918, the appellant, in company with her mother and an uncle, was about to cross to the north side of Delmar Avenue. Before doing so, while yet on the sidewalk, they looked up and down the avenue and listened for the approach of vehicles. Neither seeing nor hearing anything to indicate that the street was not clear they started to cross it. When they were about half way across the appellant was run down and struck by respondent's automobile, which it is admitted by respondent was running at the speed of twenty miles an hour. It is a business section of the city at the point where the accident occurred, which was at the intersection of Delmar and De Baliviere avenues, and the speed of automobiles, as in other business sections, is there limited by ordinance to eight miles per hour. The respondent, testifying in an argumentative manner,

states that when he first saw the appellant and those with her they were on the sidewalk on the east side of De Baliviere and he was about thirty-five feet from them; "they seemed undecided what to do, and as I came along they were just at the edge of the car, and all of a sudden they were right in front of the car, and that was all there was to it. They had umbrellas and I don't think they saw me coming. As I was appoaching them I saw them step off of the curb. They stepped three or four feet from the curb and looked and then cut across. I kept on going at a speed of not greater than twenty miles an hour. I had my lights burning and blew my horn when I saw them. The car could have been stopped in eight or ten feet. My car stopped as soon as I hit them; if not, it would have run over any of them or all of them. I threw on the emergency brake when I struck them and stopped the car within, I should judge, about ten feet. When I stopped I was fully forty feet from where I first saw Miss Evans and her party, maybe a foot or two more. One cannot tell offhand."

The testimony for the appellant was to the effect that she and her party were waiting on the sidewalk for a street car to pass which had stopped to take air, and they attempted to cross the street and were struck by the respondent's car; that they did not see or hear it coming; that no horn was blown and that the car had no head lights.

Appellant's injuries are thus summarized by her physician: "I saw her shortly after she was removed to the hospital. She was lying on a cot with her head bandaged. Her hair was badly matted with blood on the right side, and two wisps had been torn from her scalp. One of these left a wound about the size of a silver dollar, and the other the size of a quarter. The lower part of her left ear had been torn loose. Two fingers of her right hand had the appearance of having been doubled back. She was bruised black and blue on her leg, hip and one side of her body, and two of her ribs were displaced. The injuries to the ribs were on her left side, and those

to the leg and hip on her right side. One of her arms was badly sprained. The principal feature of her injury, however, was a nervous shock. This condition still exists. I continued to treat her until two months ago, at which time her nervous condition still existed. In all probability her injuries are permanent.''

I.   The accident occurred in a business section of the city and the automobile speed limit of eight miles per hour was applicable. The ordinance prescribing this limit was pleaded and its violation by the respondent was alleged and proved. This constituted negligence *per se.* An instruction was asked by the appellant predicated on this ordinance. It is as follows:

**Ordinance Neglignce.**

''4.   You are further instructed that by ordinance of the city of St. Louis, in force and effect at the time of the accident in question, it was unlawful to move or propel an automobile at a greater rate of speed than eight miles per hour in the business portions of said city. The term, business portion of the city, as used in this instruction, means a part of the city principally built up with structures·devoted to business.

''And if you find from the evidence ·that defendant was running the automobile in question eastwardly on Delmar Avenue   approaching the intersection thereof with De Baliviere Avenue, and that said automobile collided with plaintiff and injured her at or near the intersection of said avenues, and that as said automobile was approaching said intersection and as  it collided with plaintiff, it was being run by defendant at a greater rate of speed than eight miles per hour; and if you further find from the evidence that the part of said Delmar Avenue on which defendant was thus approaching said intersection and the place where said avenues intersect each other was in a business portion of said city as above defined, then such running of said automobile at a speed in excess of eight miles per hour was negligence on his part.

"And if you further find from the evidence that such negligence directly contributed to cause plaintiff's injuries, if you find she was injured, and if you further find that she was exercising ordinary care for her own safety, your verdict must be for the plaintiff."

This instruction correctly declared the law. In addition to defining the terms of the ordinance, it required the jury to find the evidentiary facts stated from which, if found, the necessary inference follows that the negligence shown was the cause of the injury; or concretely stated, to authorize a verdict for the appellant the jury was required to find that the respondent negligently exceeded the speed limit of eight miles per hour and that the appellant was at the time in the exercise of ordinary care for her own safety and that the respondent directly contributed to or was the approximate cause of the appellant's injuries. [Varley v. Columbia Taxi Cab Co., 240 S. W. (Mo.) l. c. 221; Bluedorn v. Mo. Pac. Ry., 121 Mo. 258; Kelley v. Railroad, 75 Mo. 138.] The phrase "directly contributed to" as used in the instruction cannot be reasonably construed as other than synonymous with proximate cause, by which we mean such a cause as operates to produce a particular consequence without the intervention of an independent cause in the absence of which the injuries would not have been inflicted. [Holwerson v. Railroad, 157 Mo. 231; Glenn v. Street Railway, 167 Mo. App. l. c. 116.] Thus construed the phraseology of the instruction is not vague or misleading and having correctly declared the law under the evidence, it should have been given. General instruction numbered one given at the request of the appellant hypothesizing other facts than those in regard to the speed ordinance and the respondent's duty concerning same, did not deprive the appellant of the right to instruction numbered 4.

II. The appellant contends that she was entitled under her pleadings and the proof to have her right to recover submitted under the humanitarian rule. The respondent on cross-examination shows that after he saw

**Humanitarian Rule.** appellant in a position of peril he could have stopped his car in time to have avoided injuring her. He says in effect that when he saw the appellant he had about reached the middle of the street crossing and that appellant was distant about thirty-five feet; that he could have stopped his car if then going at the rate of twenty miles an hour within ten or twelve feet and in a less space if he was traveling at a slower speed.

Not only from his testimony, but from that of the appellant and others who testified in her behalf, is it shown that when she started across Delmar there was no indication of the approach of a vehicle.

Under this testimony the appellant was entitled to have her right to recover submitted to the jury under the humanitarian doctrine. [Raymen v. Galvin, 229 S. W. (Mo.) 747.]

The appellant requested that an instruction invoking that doctrine which was drawn in conformity with our rule, as then announced, be given, and it was refused. This was error.

We held in the Raymen Case, supra, that an auto-driver, upon seeing a pedestrian about to cross a street at an intersection with another street, and who fails to slow down or give audible warning of his approach, is guilty of negligence.

Under the facts at bar therefore the appellant was entitled to have the question of respondent's liability under the humanitarian doctrine submitted to the jury. Deitring v. Transit Company, 109 Mo. App. 1. c. 548, although a street car instead of an automobile was involved, is similar in all of its material facts to those in the instant case. In that case an instruction was given for the plaintiff invoking the humanitarian doctrine. The Court of Appeals in discussing the propriety of the giving of the instruction said:

"The evidence introduced on the part of the defendant tended to show that the defendant's motorman was negligent. The motorman said he could stop a car run-

ning at a speed of eight or ten miles an hour in one and one-half car-lengths. The conductor said in two car-lengths. The motorman said that all the appliances on his car were in good order. . . . The motorman testified he used every endeavor to stop the car. . . He also testified that it would require a space of one hundred fifty feet to stop a car running at twenty-five or thirty miles an hour. The motorman admits having seen the plaintiff fifty feet before the collision, but he did not apply the brakes until within thirty feet.''

It is pertinently suggested by appellant that ''an automobile going at twenty miles per hour and slowing down to fifteen and then to twelve, can doubtless be stopped in much shorter space than a street car moving at twenty-five or thirty miles per hour.''

It is elementary that instructions should be predicated upon the issues raised by the pleadings and supported by the proof. [Raysdon v. Trumbo, 52 Mo. 38; Chappell v. Allen, 38 Mo. l. c. 222.] Leaving out of consideration for the moment, therefore, the testimony of the appellant if, as we have shown, the respondent's testimony tends to support a theory upon which the appellant may recover, then the appellant is entitled to have that theory submitted to the jury in the instructions. An instruction under the humanitarian rule having been authorized, it follows that respondent's instructions which overlook the duty of the respondent under that rule are erroneous.

III. The misconduct of the jury is urged by the appellant as error; the nature of same and its influence in improperly affecting the verdict is affirmatively stated in the motion for a new trial as follows:

''The jurors, after the conclusion of the trial, and after being sent by the court to the jury room to deliberate upon and return their verdict herein, and while considering as to what their verdict should be, and before returning the same into court, went out to the scene of the automobile accident in question, to-wit, the point on

Delmar Avenue where it is intersected by De Baliviere Avenue, and there examined and ascertained the situation and surroundings at said point as the same now exist, and discussed this case with various and divers persons, and thereupon returned to the jury room and took the present existing situation and surroundings at said point into consideration in reaching their verdict. Said conduct on the part of the jurors was and is improper and wholly unauthorized, and resulted in an unfair, unjust and unlawful verdict, found and returned by the jury upon matters not in evidence in the case, and upon their personal observations, made more than two years after the date of the accident in question, at and in the vicinity of the accident; all of which misconduct on the part of the jurors was erroneous, outside of and in violation of their duties as jurors, without any permission or authority of the court, and their verdict, found and returned in this manner, is illegal and should be set aside.''

Despite the rule from which there is no variance in this jurisdiction, that a juror will not be heard to impeach the verdict, the misconduct here made manifest is properly subject to at least judicial reproof. The legal limit of a jury's information upon which to base their action, is the evidence adduced at the trial. The oath administered to a trial jury definitely so informs them. Although fully informed as to their duty in this case, some time during their deliberations, evidently without the knowledge of the court, they proceeded to visit the scene of the accident. No purpose can reasonably be assigned therefor than to gather facts other than those in evidence upon which to base their verdict. It is held in other jurisdictions, with possibly a helpful discrimination in the proper administration of justice, that a distinction should be made in the application of the general rule between misconduct occurring inside and outside of the jury room; that when not acting in their official capacity or deliberating upon their verdict, their misconduct may be shown by the affidavit of a juror. [State v. Wilson, 42

Wash. 56, 7 Ann. Cas. 418; Heffron v. Gallupe, 55 Me. 563; Rush v. St. Paul Railroad Co., 70 Minn. 5; State v. King, 88 Minn. 175; Hempton v. State, 111 Wis. 127.]

In further exemplification of the rule it has been held that the securing by jurors of other information than that adduced in evidence constitutes such misconduct as will authorize the setting aside of the verdict and that it may be shown by the affidavit of a juror. [Peppercorn v. Black River Falls, 89 Wis. 38; Harrington v. Railroad, 157 Mass. 579; Pierce v. Brennan, 83 Minn. 422.]

In this State, however, except in the early case of Pratte v. Coffman, 33 Mo. 72, where it was held that in an extreme case involving life and liberty the rule might be departed from, it has been held without modification that jurors will not be heard to impeach their verdict, or as otherwise stated in an earlier report "a traverse juror cannot be a witness to prove misconduct of the jury in regard to their verdict." [Green v. Term. Ry. Assn., 211 Mo. 18; Devoy v. St. L. Tr. Co., 192 Mo. 197; In re North Terrace Park, 147 Mo. 259; Sharp v. Railroad, 114 Mo. l. c. 106 and cases; Easley v. Railroad, 113 Mo. 236; State v. Underwood, 57 Mo. l. c. 52.]

The necessity for the stability of judgments is urged as the reason for the unqualified application of the rule in this State, a modification of which it is contended would have the effect of placing the verdict of a jury in the power of a single juryman. [State v. Hannibal & St. Joe Ry. Co., 37 Mo. l. c. 264.]

While it has not been held by this court, except impliedly in State v. Underwood, supra, that the application of the rule must be confined to acts inside of the jury room or while the jury was deliberating upon their verdict, it has been held by one of our Courts of Appeals that a juror will not be heard to impeach a verdict regardless of whether the alleged misconduct occurred inside or outside of the jury room. [Hoffman v. Dunham, 202 S. W. (Mo. App.) 429.] This conclusion is not out of harmony with our own rulings as to the unqualified observance of the rule.

The verdict in the instant case was by three-fourths of the jury as authorized in civil cases by our Constitution (Art. 2, sec. 28). The jurors whose affidavits are employed to prove the alleged misconduct did not concur in the verdict. It is contended that their affidavits were therefore admissible. While we have not ruled upon this question it is held by courts of last resort in other states, where non-unanimous verdicts are authorized, that non-concurring as well as concurring jurors are subject to the rule, and that the former will not be heard to impeach the verdict of the majority. [Egan v. Bank, 169 Pac. (Okla.) 621, L. R. A. 1918C, 145; Spain v. Railroad, 78 Ore. 355, Ann. Cas. 1917E, 1104.]

The appellant's contention, while bringing to the attention of the appellate court a character of conduct clearly reprehensible, is not, under our rulings, a ground of reversal.

For the errors noted in the instructions, however, the case will be reversed and remanded.

It is so ordered. All concur; *David E. Blair, P. J.,* in paragraphs 1 and 2 and the result.