

# SUPREME COURT OF MISSOURI
# en banc

KRISTINE SMOTHERMAN and
BRIAN SMOTHERMAN,              )      *Opinion issued September 20, 2016*
                              )

         Appellants,           )
                              )

v.                             )      No. SC95464
                              )

CASS REGIONAL MEDICAL
CENTER,                       )
                              )

         Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF CASS COUNTY
**The Honorable William B. Collins, Judge**

## Introduction

Kristine Smotherman (Plaintiff) filed a petition for damages against Cass Regional Medical Center (Defendant) after she slipped and fell in a bathroom on Defendant's premises. The case was tried to a jury, which returned a verdict for Defendant. Plaintiff's counsel later discovered that one of the jurors during the trial had Googled the weather forecast for the day of the slip and fall. Plaintiff's motion for a new trial based on the juror's alleged misconduct was overruled. She now argues on appeal that the trial court erred in overruling her motion for a new trial. This Court disagrees.

"While every party is entitled to a fair trial, as a practical matter, our jury system cannot guarantee every party a *perfect* trial." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 87 (Mo. banc 2010) (emphasis in original). Although Plaintiff's trial was not perfect due to the misconduct of one juror, the trial court did not abuse its discretion in finding that Plaintiff suffered no prejudice from the juror's misconduct in this case.

As the trial court presides over the entirety of a trial, it is familiar with the circumstances surrounding a juror's misconduct. Accordingly, it is in the best position to determine what effect, if any, juror misconduct may have had on a jury's verdict. The trial court's determination that the extraneous evidence obtained by the offending juror was not material to the central issue in the case and was not prejudicial to Plaintiff is entitled to deference under the abuse of discretion standard of review. *Id.* at 87.

In its judgment overruling Plaintiff's motion for a new trial, the trial court found the testimony of the offending juror not credible and ascribed to it no weight. The testimony of eight other jurors, who followed their oaths and the trial court's instructions, revealed that the isolated statement of one juror colleague did not affect their deliberations or verdict in the case. The trial court explicitly found the testimony of the eight non-offending jurors credible and relied on their statements in concluding that the presumption of prejudice had been rebutted. The credibility of witnesses and the weight to be given to their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). The trial court is in a superior position to determine the credibility of witnesses, and this

2

Court defers to those determinations. *State v. Johnson*, 207 S.W.3d 24, 44 (Mo. banc 2006).

The trial court acted well within its discretion in concluding that Plaintiff was not prejudiced by the juror's misconduct based on the credible testimony of the non-offending jurors and the record as a whole. The judgment is affirmed.

**Factual Background**

While visiting the medical center for an appointment after knee surgery, Plaintiff fell in the bathroom. She testified that while she was getting up from using the toilet, the lights in the bathroom went out, her feet went out from underneath her, and she fell, hitting her head, back, and arm. A nurse found Plaintiff and took her to the emergency room. During her fall, Plaintiff sustained a cut, which became infected and required several surgical procedures to treat.

At trial, Plaintiff argued that the position of the soap dispenser in the bathroom allowed it to leak soap onto the floor, creating a dangerous condition that caused her to fall and subjected Defendant to liability. As evidence that the dispenser leaked, she offered photographs of a rusted strip on the heating element below the soap dispenser. Plaintiff noted that the soap dispenser was positioned relatively close to the bathroom door, which would allow those using the bathroom to track the leaked soap around the bathroom. As further evidence that she slipped on soap, Plaintiff testified that while she was in the emergency room, she overheard a nurse say that Plaintiff slipped and fell on soap on the bathroom floor. On cross-examination, Plaintiff conceded that the nurse had no opportunity to know whether there was soap on the floor when the nurse allegedly

3

made that statement. Plaintiff also testified that she did not see what had caused her to slip, did not recall seeing anything on the bathroom floor, and saw nothing on her clothing to suggest why she had fallen.

Throughout the trial, Defendant called into question Plaintiff's credibility, emphasizing Plaintiff's multiple criminal convictions and that Plaintiff had changed her account of why she had fallen numerous times over the course of the lawsuit. Defendant argued that the rusted strip on the heating element was more likely caused from water dripping from people's hands as they reached from the bathroom sink to the soap dispenser and that, in any event, the soap dispenser was recessed toward the back of the sink, so any dripping fluid would land where no one was likely to tread. In its closing argument, Defendant argued that Plaintiff failed to present sufficient credible evidence that soap on the bathroom floor caused her to fall. Defendant concluded that it was more likely that Plaintiff fell due to her knee problems or water on the floor.

The jury was instructed to find Defendant liable if it found that "there was soap on the bathroom floor, and as a result [Defendant's] bathroom was not reasonably safe." The jury was also instructed, pursuant to MAI 2.01(8), not to communicate with non-jurors during deliberations or conduct any independent investigation or research. The jury returned a verdict for Defendant.

After trial, Plaintiff's attorney asked two jurors about their verdict. One of the jurors mentioned that he had Googled the weather for the day of the fall and found that significant snowfall was in the forecast for that day. Plaintiff subsequently filed a motion for a new trial based on alleged juror misconduct. The trial court held a hearing on the

4

motion, at which nine jurors testified. The juror who conducted the investigation admitted that he had Googled the weather forecast for the date in question. Most of the jurors who testified, however, did not recall ever hearing anything about the weather during deliberations. The jurors who remembered a comment about the weather on the day of the fall testified that the weather was immaterial to their deliberations.

The trial court overruled Plaintiff's motion for a new trial. Plaintiff appeals.[1]

**Analysis**

Plaintiff argues that the trial court abused its discretion by overruling her motion for a new trial for alleged juror misconduct. This Court will not disturb a trial court's ruling on such a motion unless the trial court abused its discretion. *Fleshner*, 304 S.W.3d at 86-87. A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 87.

Missouri follows the Mansfield Rule, which provides that a juror's testimony about juror misconduct is generally not admissible to impeach the jury's verdict. *Id.* Nonetheless, juror testimony is admissible to establish that a juror committed misconduct by improperly gathering evidence outside of trial. *Travis v. Stone*, 66 S.W.3d 1, 4 (Mo. banc 2002).

Although the trial court found that the juror's research constituted misconduct, merely proving that a juror obtained extraneous evidence against the court's instructions

---

[1] This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

does not automatically entitle a moving party to a new trial. *State v. Stephens*, 88 S.W.3d 876, 883 (Mo. App. 2002). Instead, such misconduct raises a presumption of prejudice, and the burden shifts to the opposing party to rebut that presumption. *Travis*, 66 S.W.3d at 4. Plaintiff argues that Defendant failed to present sufficient evidence to rebut the presumption that she was prejudiced by the extraneous evidence. To be prejudicial, the extraneous evidence obtained from the juror misconduct must be material to the consequential facts of the case. *Stephens*, 88 S.W.3d at 883-84.

Plaintiff claims that the weather forecast was material evidence because the implication that it may have been snowing on the day of her fall supported Defendant's argument that something other than soap caused Plaintiff to slip and fall. The trial court disagreed and held that the weather forecast for the day of Plaintiff's fall was immaterial to the critical issue in the case, which was "whether there was soap on the bathroom floor" that caused Plaintiff to fall. In so holding, the trial court considered: (1) Plaintiff's verdict director, which required the jury to affirmatively find that there was soap on the bathroom floor to find for Plaintiff; (2) the presentation of other possible causes of Plaintiff's fall during the trial, including her preexisting knee problems; and (3) the weight of the evidence presented at trial, which supported the defense verdict rendered by the jury. In addition, the trial court considered the credible, live testimony of eight non-offending jurors that "established that the interjection of the extraneous evidence consisted of an isolated remark which was either not heard by the other jurors or was appropriately disregarded by them." As a result, the trial court found that Plaintiff was not prejudiced.

6

Plaintiff further argues that, based on precedent from this Court, the trial court could not rely on the testimony of the non-offending jurors to find that the presumption of prejudice had been rebutted. To support her argument, Plaintiff relies heavily on *Travis*, in which a juror improperly visited the site of the parties' accident. 66 S.W.3d at 3. After the jury rendered its verdict in the case, the trial court conducted a hearing on the defendant's motion for a new trial due to the juror's misconduct. *Id.* At the hearing, only the juror who committed the misconduct testified. *Id.* She stated that she did not use the information she obtained on her site visit to make decisions in the case and that she did not mention her visit to any of the other jurors. *Id.* The trial court acknowledged that the juror's visit to the accident scene constituted misconduct but overruled the defendant's motion for a new trial "without explanation." *Id.*

In *Travis*, this Court reversed the trial court's judgment because the only evidence offered to rebut the presumption of prejudice was the testimony of the offending juror and such testimony was insufficient to rebut the presumption of prejudice. *Id.* at 2. The Court reasoned that the juror's visit to the accident site might have had an impact on her decision making, which in turn could have influenced her participation in the jury deliberations. *Id.* at 5. *Travis* expressed concern that the potentially altered participation of this juror could have subtly affected the outcome of the case and that it could be "virtually impossible" to show the effect of that juror's interactions on the jury deliberations. *Id.* There was no evidence from any non-offending jurors as to what impact this action had on them. *Id.* at 2.

7

The Court, consequently, held that the lone testimony of the offending juror, who denied the potential effect of her actions, was not sufficient to overcome the presumed prejudice. *Id.* at 6. The facts in *Travis* substantially differ from the facts here, as the trial court not only heard testimony from the offending juror, but also heard from eight non-offending jurors. These non-offending jurors testified either that they had not heard the isolated comment regarding the extraneous evidence, or that they remembered hearing such a comment, but they believed it irrelevant. They all stated under oath that the statement by the offending juror did not affect their deliberations. The trial court properly placed no weight on the testimony of the offending juror, explicitly finding it not credible. It also determined that the testimony of the eight other jurors was credible and relied on their testimony in finding the presumption of prejudice rebutted.

*Travis* is further distinguishable from this case because, unlike the trial court in *Travis*, which denied the motion for a new trial without explaining its reasoning, the trial court here wrote a detailed and well-reasoned judgment denying Plaintiff's motion.[2] The judgment reflects that after the trial court carefully considered the evidence as a whole, it logically and reasonably concluded that the offending juror's misconduct and isolated comment regarding potential snowfall on the date of Plaintiff's fall was not material to the consequential facts in the case and did not prejudice Plaintiff.

---

[2] The written order shows that the trial court properly presumed prejudice from the misconduct and then analyzed the content of the extraneous evidence, the manner in which it was brought to the jury's attention, and the weight of the evidence supporting the verdict to decide whether the extraneous evidence improperly influenced the jury. *See United States v. Davis*, 393 F.3d 540, 549 (5th Cir. 2004).

Plaintiff also relies on *Middleton v. Kansas City Public Service Co.*, 152 S.W.2d 154, 159-60 (Mo. 1941), because in that case the Court concluded that nine nearly identical "form" affidavits of jurors were not sufficient evidence to rebut the presumption of prejudice created by a juror's misconduct. *Middleton* is easily distinguishable from the facts of this case. In *Middleton*, the trial court misapplied the law by improperly placing the burden on the moving party to show how the juror's misconduct in obtaining material extraneous evidence was prejudicial. *Id.* at 156, 159. Such is not the case here, as the trial court properly presumed prejudice from the misconduct before considering whether the non-moving party presented sufficient evidence to rebut the presumption. Further, the trial court here heard *live testimony* from eight non-offending jurors during the hearing on Plaintiff's motion for a new trial, which is substantially different from the "form" affidavits offered in *Middleton*. In *Middleton*, each juror signed an identical statement denying any potential effect of the misconduct. *Id.* at 160. In this case, each of the jurors appeared before the trial court and testified in their own words that they were not aware of, or disregarded, the offending juror's comment, and that the misconduct had no influence on their deliberations.

Neither *Travis* nor *Middleton* addressed the weight that should be given to the testimony of non-offending jurors when the trial court correctly applies the presumption of prejudice. In fact, *Middleton* expressly distinguished cases in which there was "nothing to show that the trial court, in ruling the motions, did not exercise a sound judicial discretion" and in which no "error of law appears on the face of the record," which is the case here. 152 S.W.2d at 159-60. The presence of credible, non-offending

9

juror testimony in support of the verdict and the trial court's detailed, carefully reasoned judgment demonstrating that it correctly applied the law set this case apart from *Travis* and *Middleton*. Because of these material differences, *Travis* and *Middleton* do not control the outcome in this case.

Here, the trial court properly applied the law presuming prejudice from misconduct but found the prejudice rebutted by the credible testimony of eight jurors who complied with the court's instructions. The trial court's decision is entitled to deference under the abuse of discretion standard of review, and it is not the proper role of this Court to reweigh the evidence on appeal or override the trial court's credibility determinations. The question before the Court is whether the trial court's decision not to grant a new trial is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Fleshner*, 304 S.W.3d at 87. Because no such showing has been made, the judgment of the trial court must be affirmed.

In arguing that the testimony of the non-offending jurors was insufficient to overcome the presumption of prejudice in this case, Plaintiff, in effect, asks this Court to adopt a new rule that non-offending jurors' testimony in support of their verdict should never be accorded any weight. Such a rule is not in accordance with the jurisprudence of this state. The trial court is "familiar with the surrounding circumstances" of a juror's misconduct during a trial and is "in a better position than we to determine what, if any, effect such conduct may have had upon the verdict." *Turnbow v. Kan. City Rys. Co.*, 211 S.W. 41, 44 (Mo. 1919). As the fact-finder, it is in the trial court's province to determine the credibility of witnesses, and there is no logical reason to treat non-offending jurors as

10

categorically less credible than all other witnesses, such that trial courts cannot be trusted to weigh the veracity of their testimony:

> [T]he trial court is presumably acquainted with [the jurors], and, if they are influenced by bias or prejudice, knows that fact. The jurymen are under his eye during the progress of the trial, and their demeanor is observed by him; hence he is in a much better position to arrive at a correct conclusion in regard to their alleged misconduct than we are . . . .

*Hoffman v. Dunham*, 202 S.W. 429, 431 (Mo. App. 1918).

To hold summarily on appeal that the live testimony of jurors who did not participate in any misconduct should be given little or no weight would displace the trial court as the proper arbiter of credibility and, further, would imply that the statements of individuals who properly fulfilled their civic duty in serving on the jury are inherently suspect. While *Travis* requires courts to assume that misconduct might have a subtle effect on the verdict and, consequently, to presume prejudice from the misconduct, that presumption may be overridden by weighing the credible testimony of jurors who testify that they were not improperly influenced during their deliberations.

Numerous decisions by this Court and the court of appeals affirm the trial court's broad discretion to grant or deny a new trial based on juror misconduct. *See, e.g.*, *Consol. Sch. Dist. No. 3 of Grain Valley v. W. Mo. Power Co.*, 46 S.W.2d 174, 180 (Mo. 1931) (although a juror improperly gathered evidence extraneous to trial, this Court found no abuse of discretion in overruling a motion for a new trial because the juror did not gain evidence contrary to what was presented at trial and an affidavit of a different juror stated that the offending juror never shared the information with other jurors); *State v. Herndon*, 224 S.W.3d 97, 100-03 (Mo. App. 2007) (the trial court did not abuse its discretion in

11

finding that the presumption of prejudice, which arose after jurors conversed with non-jurors on their cellular phones during jury deliberations, was rebutted when all of the jurors testified that these communications did not influence the jury's verdict); *State v. Hayes*, 637 S.W.2d 33, 38-39 (Mo. App. 1982) (the trial court did not abuse its discretion in failing to grant a new trial when the alternate juror was present during the beginning of the jury's deliberations, but affidavits of the alternate and all twelve jurors stated that the alternate did not participate in or influence the deliberations); *State v. Suschank*, 595 S.W.2d 295, 297-98 (Mo. App. 1979) (no abuse of discretion in overruling a motion for a new trial after jurors looked up the definition of "reasonable" in a dictionary when the jurors testified that the dictionary search did not influence the jury's verdict); *Hoffman*, 202 S.W. at 431 (finding that four or five jurors committed misconduct by going to the scene of the accident during deliberations but holding that the trial court did not abuse its discretion in overruling a motion for a new trial based on the affidavits of eight jurors, which stated that the verdict was not influenced by the unauthorized visit). A rule preventing the trial court from weighing the testimony of non-offending jurors would be inconsistent with this jurisprudence.

Finally, it should be noted that creating a new rule assigning little or no weight to the testimony of non-offending jurors, as Plaintiff asks this Court to do here, would have the practical effect of making the presumption of prejudice irrebuttable whenever a juror obtains material extraneous evidence. If the trial court is not allowed to believe the testimony of such jurors, then it has no choice but to grant a new trial every time a single juror fails to comply with the court's instructions, even if the juror did not learn any

12

information contrary to what was presented at trial, and even if the information is never shared with the other jurors. If this were the law in Missouri, there would be no need for the trial court to conduct a hearing and receive evidence regarding the effect of juror misconduct because such evidence could never overcome the presumption that it prejudiced the losing party. This outcome is not mandated by *Travis* or *Middleton*, and it contradicts settled precedent of this Court holding that the decision to grant a new trial as a result of juror misconduct is within the sound discretion of the trial court. *Fleshner*, 304 S.W.3d at 86-87.

**Conclusion**

The trial court's judgment is affirmed.


_____
Mary R. Russell, Judge


Breckenridge, C.J., Fischer and Wilson, JJ., concur; Teitelman, J., dissents in separate opinion filed; Stith and Draper, JJ., concur in opinion of Teitelman, J.


KRISTINE SMOTHERMAN and, )
BRIAN SMOTHERMAN, )
                                  )
        Appellants, )
                                  )
v. )        No. SC95464
                                  )
CASS REGIONAL MEDICAL )
CENTER, )
                                  )
        Respondent. )

**Dissenting Opinion**

I respectfully dissent.   The principal opinion holds that Plaintiff is not entitled to a

new trial even though a juror engaged in independent factual research that disputed

Plaintiff's theory of liability, admitted his deliberations were influenced by his research

and then communicated his findings to his fellow jurors.  While Plaintiff is not entitled to

a perfect trial, Plaintiff is entitled to a fair trial based on the evidence presented at trial

rather than on extra-judicial information gathered through juror misconduct.  Therefore, I

would reverse the judgment and remand the case for a new trial.

The bar on independent juror research is an integral part of the resolution of

disputes in an adversarial system because "[t]he legal limit of a jury's information upon

which to base their action is the evidence adduced at the trial." *Evans v. Klusmeyer*, 256

S.W. 1036, 1039 (Mo. 1923).  For this reason, a juror's independent factual research "has

been termed reprehensible conduct" creating a presumption of prejudice that must be rebutted by the non-moving party. *Middleton v. Kansas City Pub. Serv. Co*, 152 S.W.2d 154, 158 (Mo. 1941) (citing *Klusmeyer*, 256 S.W. at 1039.). Therefore, as the principal opinion notes, the presumption of prejudice applies once it is established that a juror has gathered information extraneous to evidence at trial. *Id*. The presumption of prejudice relieves the moving party of the burden of proving prejudice and, instead, shifts the burden of demonstrating "that no prejudice resulted from it." *Travis v. Stone*, 66 S.W.3d 1, 4 (Mo. banc 2002).

To determine whether prejudice resulted from a juror's improper independent investigation, courts first must determine whether the information discovered is material to the case. *Travis*, 66 S.W.3d at 6. Evidence is material if it has "some logical connection with the consequential facts." *State v. Stephens*, 88 S.W.3d 876, 883-84 (Mo. App. 2002) (quoting BLACK'S LAW DICTIONARY 991 (7th ed. 1999)).

The trial court's analysis of Plaintiff's juror misconduct claim began with the clearly erroneous determination that the juror's independent investigation into the weather forecast and the attendant possibility that Plaintiff slipped on water rather than soap is immaterial to the cause of Plaintiff's slip and fall. The extra-judicial information regarding the weather forecast is material to the case because the possible existence of water on the floor has an obvious logical connection to the central disputed issue of what caused Plaintiff to slip and fall. This initial error in finding that the information was immaterial necessarily led to the further erroneous conclusion that there was no prejudice because immaterial evidence, by definition, cannot be prejudicial. *Stephens,* 88 S.W.3d

2

at 883.  The trial court's decision to overrule Plaintiff's motion for a new trial was erroneous from outset.

Although the determination that the evidence was immaterial should have ended the matter, the trial court also determined that there could be no prejudice because eight non-offending jurors testified credibly that "the interjection of the extraneous evidence" was an "isolated remark" that had no impact on the jury's deliberations.  Even though the trial court found that the eight non-offending jurors testified credibly that the offending juror's independent research had no effect on their deliberations, the fact remains that the offending juror admitted that his extra-judicial research influenced his decision.  When asked by Plaintiff's counsel what factors led to the jury's verdict in favor of the Defendant, the offending juror stated that he had "checked the weather forecast for th[e] day [of the accident] and the forecast was for eight to ten inches of snow." Although each juror independently considers the evidence, the jury's decision-making process involves collective deliberation with the goal of reaching a consensus.  In this case, the offending juror's admission that his independent research influenced his deliberations establishes that the jury deliberations were compromised even though other jurors testified that there was no impact.

The principal opinion's reliance on the fact that eight non-offending jurors testified that the juror misconduct had no impact on their decision is also inconsistent with this Court's previous recognition that a juror's independent factual research is uniquely prejudicial.  In *Travis*, a juror visited the scene of the accident at issue to help her "understand the testimony presented at trial."  66 S.W.3d at 3.  This Court reversed

3

the denial of a motion for new trial based on alleged juror misconduct because "it must be assumed" that the juror's investigation had an impact on the jury's decision, "which in turn influenced [the juror's] participation in the jury deliberations." 66 S.W.3d at 5. The influence of the extra-judicial information may have "subtly affected the outcome of the case," warranting a new trial even though there was no indication that the offending juror had communicated the findings to the other jurors. *Id.* This Court further noted that in cases of juror misconduct involving improper gathering of extra-judicial information, it is "virtually impossible for anyone to demonstrate the effect of [the offending juror's] interactions on the deliberations, especially given the fact that there is no contemporaneous record of jury deliberations." *Id.*

The principal opinion attempts to distinguish this case from *Travis* by noting that, in *Travis*, only the juror who committed the misconduct testified, while, in this case, all nine jurors either testified or submitted affidavits stating that the extra-judicial information did not influence their deliberations. *Travis*, however, relied on *Middleton,* in which nine jurors submitted affidavits stating that the extra-judicial information had no influence on their verdict. Yet, in *Middleton*, this Court held "[W]e think these affidavits had little probative value because of the common tendency of jurors to minimize the effect of misconduct." 152 S.W.2d at 160.

In addition to the unequivocal denouncement of independent factual research by jurors, *Travis* is particularly instructive for two additional reasons. First, unlike this case, the juror in *Travis* did not share the information with the other jurors. If the existence of extra-judicial information can prejudice jury deliberations when it was not presented to

4

the remaining jurors, it follows that the prejudicial impact is amplified when, as in this case, the offending juror shared the improper information with other jurors. Second, the offending juror in *Travis* visited the scene of the accident to generally better understand the testimony in the case. In contrast, in this case, the offending juror researched the weather to investigate the very specific fact of whether there was a possibility that Plaintiff slipped and fell on water rather than soap. If the improper general investigation in *Travis* was prejudicial, then the focused research in this case to test a specific theory of alternate causation should be deemed prejudicial as well.

Given the high standard to overcome the presumption of prejudice caused by juror misconduct and the modest weight given to jurors' claims that they were not affected by extrinsic evidence, I would hold that the jurors' testimony does not overcome the presumption of prejudice by showing "that no prejudice resulted from it." *Travis*, 66 S.W.3d at 4. The judgment should be reversed, and the case should be remanded for a new trial.

_____
Richard B. Teitelman, Judge

5