## DYSART-COOK MULE COMPANY, Appellant, v. REED & HECKENLIVELY, Respondents.

**St. Louis Court of Appeals, October 17, 1905.**

1. **PRACTICE: Peremptory Instruction: Oral Evidence.** Although the plaintiff's oral evidence in making out his case is not contradicted upon a material issue, the defendant is entitled to have such issue submitted to the jury.

2. ———: **Instruction: Explaining Terms.** An appellant will not be heard on appeal to complain of vague and uncertain language in an instruction, otherwise correct, given to the jury, where he did not ask an instruction defining such language.

3. ———: ———: **Limiting Instruction to Evidence.** In an action against a firm of architects for damages caused to plaintiff by the unskillful drawing of plans for a building, or negligent superintendence of its construction, or willful misrepresentations of the plans of the plaintiff, it was not error to instruct the jury authorizing a verdict for defendant without including the element of misrepresentation, where there was no evidence that the defendants misrepresented the plans.

4. ———: **Misconduct of Jury: Viewing Property in Dispute.** In an action against a firm of architects for damages caused to plaintiff by the unskillful drawing of plans for a building and negligent superintendence of its construction, the fact that some of the jurors looked at the building in a casual way without taking any measurements and stated by their affidavits that their verdict was not influenced by the inspection, was not such misconduct as to authorize the setting aside of the verdict.

5. ———: ———: **Weight of Evidence.** Where affidavits in support of motion for new trial are filed showing misconduct on the part of a juror and counter affidavits are filed disputing the fact, the finding of the trial court that there was no misconduct, in his overruling the motion for new trial on that ground, will not be disturbed.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*Harrington, Tatlow & Delaney* for appellants.

The action of three of the jurors in visiting the barn during the progress of the trial, and the action of one juror in discussing the case during the progress of the trial, is ground for a new trial. In this case a casual observation would naturally create an impression adverse to plaintiffs' contention. 12 Am. Ency. Plead. & Prac., p. 588; Ortman v. Railroad, 32 Kan. 419; Bradbury v. Cony, 62 Me. 233; Harrington v. Railroad, 157 Mass. 579; Rush v. Railroad, 72 N. W. 473; Deacon v. Shreve, 27 N. J. Law 176; Estwood v. People, 14 N. Y. 562; State v. Saunders, 68 Mo. 202; People v. Conkling, 111 Cal. 616.

*Woodruff & Mann* and *V. O. Coltrane* for respondents.

(1) There was no evidence to call for or to support an instruction based on willful misrepresentation of the plans by defendants to the plaintiffs. And even if there had been, no such instruction was asked by the plaintiffs. The judgment will not be reversed because the court failed to instruct upon every possible hypothesis made by the evidence. Plaintiffs cannot lie by and await the chances of a favorable verdict, and when the chance has proved against them, turn round and complain of the failure of the court to give a correct expression of the law. Merrill v. St. Louis, 12 Mo. App. 479; Construction Co. v. Railroad, 71 Mo. App. 626; Wheeler v. Bowles, 163 Mo. 398. There is no obscurity or inaccuracy of expression in the instructions that will warrant a reversal. If it is possible by an analysis in detail to show technical defects, yet they are correct in spirit and substance, which is all that is required. Swanson v. Sedalia, 89 Mo. App. 121; Hamman v. Coal Co., 156 Mo. 232; Baker v. City of Independence, 93 Mo. App. 165. (2) The action of three jurors in looking at the barn

during the trial of the cause was not, under the circumstances, a sufficient ground for awarding plaintiffs a new trial. That some of the jurors looked at the barn in a casual way, is conceded. Their affidavits, however, show that their decision was in no way influenced thereby; nor can it be seen how they could have been influenced by seeing the barn, since all the facts as to levels, elevations, measurements, etc., were conceded in the testimony, and the dispute concerned instructions that plaintiffs gave defendants as to the initial point from which to determine the floor level; whether the change in the level of the floor was to be a gradual incline or in jogs, and as to the importance of the height of the basement. State v. Brown, 64 Mo. 367; McCormick v. City of Monroe, 64 Mo. App. 197. (3) The question of whether the jurors, Ward, Hodge and Dean, were guilty of misconduct during the trial of the case was submitted to the trial court. It was a question of fact. He knowing the parties who made the affidavits; knowing the location of the barn with reference to the courthouse and public streets of the city, and being familiar with all the facts and circumstances of the case, was of the opinion that the jurors were not improperly influenced by what they saw, and that the plaintiffs were not injured. His findings should not be disturbed in the absence of an unsound discretion or of gross error. There is nothing in the evidence to indicate that it was the exercise of unsound discretion or error. State v. Latimer, 116 Mo. 524; Schmidt v. Rose, 6 Mo. App. 587; State v. South, 145 Mo. 663; State v. Nocton, 124 Mo. 553.

BLAND, P. J.—Such extracts of the evidence as the plaintiff has seen fit to quote in its statement of the case furnish an apology for the abstracts of the record which the statute and rules of the court require it to furnish. While these quotations are meager they furnish a brief history of the case. It appears that plain-

tiff is a corporation and owns a lot on the corner of Olive and Campbell streets, in the city of Springfield, Missouri, fronting eighty-one feet on Olive and running back north one hundred and seventy-two feet on Campbell. In the year 1903 plaintiff employed the defendants (a co-partnership of architects) to draft plans for, and superintend, the erection of a two-story brick mule barn to cover the entire lot, and gave instructions to the defendants about the elevation and arrangement of the barn. Defendants drafted the plans and prepared specifications for the construction of the barn and superintended its erection. It is alleged in the petition that either the plans and specifications were unskillfully and negligently drawn or through the negligence and unskillfulness of defendants in the erection of the barn the plans were departed from to the damage of plaintiff. From what we can gather from the extracts of the evidence, the entrance to the barn is on Olive street through an eleven-foot door in the front wall. Plaintiff's officers testified that it was agreed and understood between plaintiff and defendants, and that the plans so show (plans not before us) that there was to be a three-inch elevation in the entrance from the outside to the inside of the wall (a distance of thirteen inches) and from the inside of the wall an elevation of six inches in two feet of floor space; that from the terminus of the elevation on the inside it was agreed, and the plans so show, a dead level of floor space twelve feet in width to the rear wall of the building, which space was to be fenced off as a mule alley and to be used for the purpose of showing horses and mules for sale.

It appears that on account of an ordinance of the city of Springfield in regard to sidewalks it was afterwards agreed to increase the elevation in the doorway two and one-half inches to conform to the grade of Olive street. Olive street runs east and west and Campbell street north and south. There is a slope of eight feet from east to west in Olive street in the eighty-one feet

fronting plaintiff's lot, and a ten-foot slope or fall to the north on Campbell street in the distance it bounds plaintiff's lot. It thus appears that the curbstone on the northeast corner of Olive street is the highest established grade point in the street bounding the lot. From this grade point the defendants contend they took the elevation for the barn floor and basement walls with the knowledge and by the consent of plaintiff, and that this was done in order to get the proper height for the basement. On the other hand, the plaintiff's evidence tends to show that the top of the curbstone fronting the entrance to the barn was the point from which the elevation was to be taken and that the plans show this fact. The basement is sixty feet long and is entered from Campbell street. It apears that the Olive street entrance is thirty inches above the curb fronting the entrance and on account of this elevation it is difficult to draw loads of feed into the barn, and plaintiff's evidence is that the floor of the mule alley is not level but is on an incline and on account of this incline the alley is not suitable for exhibiting mules and horses for sale. Defendants testified that the plans for the barn were repeatedly changed with the consent of the plaintiff while the basement walls were in course of erection and that these changes were necessary to procure the height of basement desired by the plaintiff's officers, who insisted on a nine-foot basement, and that these changes were made after a great part of the basement walls had been laid.

The court gave instructions to which plaintiff objected but asked none in its behalf. The verdict was for the defendants.

1. Plaintiff insisted that it was entitled to at least nominal damages but it did not so move the court to instruct the jury and there is nothing in the pleadings (the answer was a general denial) and no admission of any fact on the part of the defendants contained in the plaintiff's statement of the evidence which would warrant a

peremptory instruction to find for it. The officers of the plaintiff were the principal witnesses in its behalf and no fact or facts testified to by them or either of them, which would entitle it to a verdict, was admitted by the defendants. In such circumstances the case is one for the jury, although the plaintiff's oral evidence is not contradicted by any other witness. The interest of the plaintiff in the event of the suit is of itself sufficient to require the submission of the case to a jury. [Janks v. Glenn, 86 Mo. App. 329.]

2. The court gave the following instructions of its own motion:

"1. The uncontradicted and admitted facts in this case are that defendants are architects and as such engaged themselves to plaintiffs to draw plans for and superintend the construction of plaintiff's mule barn. Now by such engagement the defendants guaranteed to plaintiffs that they (defendants) had and possessed the necessary skill and that they would use proper care to draw said plans and superintend the construction of said building in a workmanlike manner, and if they did not possess such skill, or if they were negligent in their conduct in the premises and such want of skill or such negligence caused a loss to plaintiffs in the particulars complained of, then defendants are liable to plaintiffs for such loss.

"2. If you find from the evidence that plaintiffs explained to defendants the elevation they desired for the floor of said barn and of the 'mule alley' thereof, and instructed them to place the same upon a certain level, and to have the same constructed on a level plane with a raise of three inches at the door from the curb level in front, and with another raise of six inches at the south end of the mule alley, and if you further find from the evidence that defendant undertook and agreed to cause the floor to be constructed in such manner, and if you further find from the evidence that defendants by any want of skill or by any negligence on the part of either

of them, caused said floor to be constructed in such manner, and if you further find put to a greater outlay in excavating, and filling, and in the building of walls than they would have been had the floor been placed as agreed upon, then plaintiffs are entitled to recover of defendants the amount of such unnecessary outlay. And if under such circumstances the building as constructed is less valuable than the same would have been if constructed according to such agreement, then plaintiffs are entitled to recover of the defendants an amount equal to such difference in value. It is incumbent on the plaintiffs to prove the facts necessary to a recovery as above set forth by a preponderance or greater weight of the evidence, and unless they have done so your verdict should be for the defendants.

"3. If you find from the evidence that defendants drew the plans and submitted them to plaintiffs and that the plans so submitted were agreed upon between them, and that the building was afterwards constructed in accordance with such plans, except changes mutually agreed upon; then plaintiffs cannot recover even though there may have been a misunderstanding between them as to the particulars complained of, unless such misunderstanding was caused by a want of skill or by negligence on the part of the defendants.

"4. You are the sole judges of the credibility of the witnesses and of the weight to be given their testimony. In passing upon the weight of their testimony you may take into consideration their interest, bias or prejudice, if any, their relationship to the parties, and to the case, if any, the probability or improbability of the story related by them and any and all other facts and circumstances in evidence which in your judgment would add to or detract from their credibility or the weight of their testimony."

The plaintiff's criticism of the first instruction is as follows:

"(a)   The instruction is vague and leaves the jury to guess at what the court meant by the language, 'or if they were negligent in their conduct in the premises.'

"(b)   The term *proper care* is not explained or defined in the instruction or in any other instruction.

"(c)   It entirely overlooks the allegation of the petition that defendants represented the plans to be of a character different from what they were in fact.

"(d)   It limits liability of defendants to want of skill in drawing the plans; or to want of skill in superintending the building; or to negligence in drawing plans; or to negligence in superintending the work; whereas they are liable if they *misrepresented* the plans no matter how skillfully the plans were drawn and no matter how skillfully the work may have been done. And they are liable even if the plans were skillfully drawn and even if the work was skillfully done, if the completed work did not give plaintiff the building contracted for.   This may not have been the result of negligence."

There is nothing vague or uncertain in the language of the instruction.   If there are terms used which plaintiff thought should be explained to the jury why did it not ask an instruction properly defining such terms? Why lie by and wait the chances of a favorable verdict before making complaint if it apprehended that the jury would not understand the meaning of terms used in the instruction as given, which is not erroneous?   In these circumstances plaintiff must abide the result.   [Merrill v. City of St. Louis, 12 Mo. App. 1. c. 479; Construction Co. v. Wabash R. R. Co., 71 Mo. App. 626; Wheeler v. Bowles, 163 Mo. 398, 63 S. W. 675.]

There is no evidence that defendants misrepresented the plans for the barn to the plaintiffs.   The gravamen of the petition is that defendants "either drew the plans so as to call for the erection of the basement walls under said building twenty-one inches higher than the same should have been erected according to the instructions

given, as aforesaid, by the plaintiffs to the said defendants for the construction of said buildings, or having drawn the plans so as to show the walls of the right height, negligently, carelessly, unskillfully and without exercising that degree of skill usually possessed and exercised by architects and superintendents of buildings, caused, directed and procured the building of the walls for the said basement under said building twenty-one inches higher than the same should have been built.

"That plaintiffs cannot state which alternative is true, whether defendants drew the plans wrong, or, having drawn them right, negligently superintended the construction of the walls, as aforesaid, but plaintiffs say that they believe that the defendants committed an error or errors in the drawing of the plans and specifications, but if so the defendants were also negligent, careless and unskillful in the superintending and directing the construction of such walls, and in not discovering such error or errors while so superintending the construction thereof.

"That the construction of the basement walls, as aforesaid, in the manner aforesaid, under the direction and superintendence of the defendants, caused a rise of thirty inches from the entrance on Olive street north to the south wall of the basement, which is about one hundred and four feet, instead of a rise of only nine inches, as it should have been, which rise of nine inches was to have been a rise of three inches, as above described, at the door, and six inches at the beginning of the mule alley, as above described, and that the mule alley was to have been on a level, but that the mule alley as constructed slopes six and two-eighths inches from the north wall of the building to the south end of the said mule alley, and the balance of the floor of said building has a decline of about twenty-four inches to the south door of the said barn from the said south end of said mule alley."

In short, that defendants were negligent and un-

skillful either in drawing the plans or in their supervision of the erection of the barn. The instruction is predicated on these allegations of the petition and authorized the jury to find for plaintiff if the defendants were negligent or unskillful either in drawing the plans or in supervising the erection of the barn. The objections to the other instructions are disposed of by what is said in respect to the objections to the first one.

3. One of the grounds in the motion for new trial is misconduct of three of the jurors during the progres. of the trial. In support of this ground affidavits were filed in which it is stated that two of the jurors passed by the barn and looked at it while the case was in progress, and that a third went into the barn and "looked around." Counter affidavits were filed by the three jurors in which they stated that the barn is near the court-house where the trial was being held; that the two who passed by were drawn that way by business and casually looked at the barn, took no measurements, made no estimates of the elevation of the door entrance above the street and were not in the least influenced by what they saw when passing by the barn in arriving at a verdict but were governed entirely by the evidence adduced at the trial. The third juror stated in his affidavit that he had been in the barn frequently before he was summoned as a juror and that the plaintiff's officers knew the fact; that during the trial he went into the barn to see a man on business and found him; that he took no measurements, made no estimates and was governed entirely by the evidence adduced on the trial in arriving at his verdict.

T. W. Robertson, one of the affiants in support of the motion, stated that pending the trial he met A. W. Ward, one of the jurors, on the street in the city of Springfield and had a conversation with him in which Ward, in reply to a question as to whether he thought he would get off the jury in time to vote at the primary

114 app—20

election, said that he thought so, that the case did not amount to much, that Dysart (meaning one of the officers of the plaintiff) had built a barn that cost him more than he thought it would and was wanting to "pull Reed & Heckenlively's leg for two or three thousand dollars;" that Ward also said, "We may have some trouble with one man (Hale Duncan) but in this kind of a case it takes more than three to hang a jury and I think we can pull them over." Robertson's statement was corroborated by Charles T. Afflack, who stated in his affidavit that he stood by and heard the language of Ward as it is stated in Robertson's affidavit. Ward, in counter affidavit, swore that he had a conversation with Robertson and Robertson asked him what he thought about the case; that his reply was that he thought they had only one stubborn man on the jury, and that he did not express to Robertson or any one else any opinion on the merits of the case or give any intimation of his own opinion of the merits or how he would vote in the jury room; that the only expression of opinion made in the conversation about the merits was made by Robertson himself; that he was not in the least influenced by what Robertson said and did not see Afflack during the trial of the case and that Afflack was not present at the conversation between himself and Robertson.

The fact that some of the jurors casually saw the barn did not affect their verdict. Jurors in civil cases are not required to be kept together under lock and key nor under the guard of an officer. They are permitted to go about the streets during the recesses of the court pending the trial and if in so doing they casually see the thing in dispute it is the fault of the law not of the jurors. For if they do not examine the thing with the view of ascertaining for themselves the truth of the matter in controversy or forming some opinion about the points in dispute, no harm is done. There is nothing in the affidavits to show that either of the three jurors viewed the barn for the purpose of gaining information that would

enable them to arrive at a correct verdict, and their affidavits dispel even the suspicion that such was their object in seeing the barn.

In respect to the alleged misconduct of the juror Ward, there is a conflict in the evidence which the trial court resolved in favor of the juror, and we think it is our duty to defer to the finding of the trial judge in matters of this sort. He is presumably acquainted with the affiants and if they are influenced by bias or prejudice, knows that fact. The jurymen are under his eye during the progress of the trial and their demeanor is observed by him, hence he is in a much better position to arrive at a correct conclusion in regard to their alleged misconduct than we are, and, I repeat, that his ruling in such matters should be deferred to by an appellate court unless it substantially appears that he has erred in finding there was or was not misconduct on the part of one or more of the jurors.

It does not substantially appear that the learned trial judge erred in finding there was no misconduct of the jurors in this case, and the judgment is affirmed. All concur.