MAE MIDDLETON v. KANSAS CITY PUBLIC SERVICE COMPANY, Appellant.
—152 S. W. (2d) 154.

Division One, April 18, 1941.
Rehearing Denied, June 12, 1941.

*Charles L. Carr, Watson, Ess, Groner, Barnett & Whittaker, William
A. Kitchen* and *Herbert C. Hoffman* for appellant.

*Schwimmer, Keating, Bredehoft & Burris* and *Walter A. Raymond* for respondent.

DALTON, C.—This is an action for damages for personal injuries. Plaintiff was a passenger on one of defendant's street cars and was injured when a collision occurred between the street car and an automobile. The jury returned a verdict for plaintiff for $10,000, upon which judgment was entered, and defendant appealed.

Plaintiff was riding on an eastbound street car on Eighth street in Kansas City. She was seated near the rear of the street car, on the north side, facing south. The collision occurred at the intersection of Eighth and Oak streets. Plaintiff was thrown upward and off the seat to the floor. She first hit an iron rail on the edge of the seat and then struck the floor. She received severe and permanent injuries.

The petition charged general negligence under the *res ipsa loquitur* doctrine. Plaintiff's evidence tended to show that at the time of the collision a man was standing at the right front door talking to the operator of the street car; that the street car was traveling 20 to 25 (and 25-35) miles per hour; that it did not stop or slow down on entering Oak street, or before the collision; that there was no warning bell or gong sounded as the street car entered the intersection or before the collision; that the brakes were not applied before the collision; that the automobile, a 1930 Chevrolet sedan, was traveling north on Oak street at 5 to 7 miles per hour; that the collision occurred near the center of the intersection and a little to the east; that the automobile driver had stopped for the crossing at a stop sign on the south side of Eighth street and had then started slowly across; that he did not see the street car until it was about 10 feet away; that he turned sharply to the left in an effort to avoid the collision and put on his brakes; that the right front end of the street car hit the left front wheel of the automobile and swung it around so that the left rear of the automobile hit the right side of the street car and broke a window glass in the street car; and that the front end of the automobile was knocked over the curb onto the sidewalk on the south side of Eighth street east of Oak street.

Defendant's evidence tended to show that the street car slowed down and came to a momentary stop at Oak street; that the operator tapped the gong twice as a warning to passengers as he put on the power to move the car forward; that he was not talking to anyone; that there was a stop sign for north and south traffic on Oak street, which street carried Highway No. 71 traffic; that there was no stop sign for east and west traffic on Eighth street; that the street car traveled slowly across the intersection which was clear of automobile traffic; that it had attained the speed of 15 miles an hour when the collision occurred; that the 43 foot street car had cleared the intersection, except for 9 to 15 feet, when the collision occurred; that the operator first knew of the collision when the glass was knocked out of the third window from the rear on the right side of the street car; that no

automobiles were close to the intersection as the street car started across; that it was a cold day and the pavement was covered with ice; that the Chevrolet automobile had approached from the south at a speed of 25 to 30 miles per hour; that it did not stop for the stop sign at Eighth street; that the automobile skidded into the right-hand side of the street car; that in an effort to avoid the collision, the automobile was turned into Eighth street; ▇▇▇ that the left fender of the automobile struck the street car when the automobile was at an angle of 45 degrees to the street car; that there was no collision at the front of the street car and no marks there; that there were marks on the right hand side of the street car; that the automobile and street car were stopped so that the rear end of each was about even with the east side of Oak street.

In support of their respective theories, the parties offered in evidence pictures of the automobile showing the dents in the left front fender and damage to headlight lamps, the running board, and the body of the automobile. Defendant's operator testified that there were marks on the side of street car under the edge and just at the rear of the air tank; that these marks were right on the corner or edge of the street car, on the bottom edge of the street car body, and 10 inches behind the air tank. He said the body of the street car was 32 inches above the track; that the wheel of a 1930 Chevrolet was 31 inches and the fender a little higher. The evidence did not show the amount of inflation of the tires nor the load of the automobile, other than that the automobile contained two persons traveling from Texas to Iowa. The pictures of the street car, involved in the accident, show the body of the car on the sides was much higher than the body of the car at the front where the body constituted the front bumper.

Because of the type of the damage to the automobile, and in view of the theories of the respective parties, an issue developed in the trial as to the relative height of the left front fender of the automobile and the body of the street car. Defendant's witnesses said that the front or lower part of the left front fender was low enough to go under the body of the street car on the side but not the top of the fender. Appellant insists this was a vital issue in the case and an aid to the jury in determining whether the street car struck the automobile or the automobile struck the street car. Several of defendant's witnesses were sharply cross-examined by plaintiff's counsel as to whether any part of the automobile could or would go under the body of the street car.

Error is first assigned on the court's action in refusing to grant a new trial because of alleged misconduct of a juror. The motion for a new trial was verified and accompanied by certain affidavits. Additional affidavits were subsequently filed, by both plaintiff and defendant, by permission of the court. A hearing was then had on

the motion and all affidavits were received in evidence and oral testimony heard. The affidavit of juror Tudor, who signed the verdict as foreman, disclosed that during the trial, which extended over several days, he visited various used car establishments (naming or locating them) seeking a 1930 Chevrolet automobile of the same model mentioned in evidence; that at the seventh place visited he found such an automobile and measured it, finding the height of the left rear fender at 36 inches and the height of the front left fender at 33 inches; that he measured a street car at the corner of Fifteenth and Oak streets, a car which he thought resembled the one mentioned in evidence, and found the distance from the front bumper to the pavement to be 25 inches and the body of the street car to be 32 inches above the pavement. Another affidavit of the same juror, filed and offered in evidence by plaintiff, stated that the measurements he made, as stated in his first affidavit, did not influence his verdict nor change the result, nor did it affect the verdict of any member of the jury. He said the jury immediately on retiring to deliberate, and without discussion, voted ten for plaintiff, and that the verdict was wholly and solely based upon the evidence introduced at the trial.

Defendant called as witnesses two persons from one of the used car lots visited by the juror on the morning of the last day of the trial. One of them recognized juror Tudor, who was present in the courtroom for the hearing on the motion, as the man who came to the used car lot. The other witness could not identify him as the man. Their testimony tended to show that a person, identified by one as juror Tudor, came to the used car lot that morning, while they were talking to each other; that he was looking at a 1931 Chevrolet; that he was told it was not for sale; that he requested and received permission from the person in charge to measure the 1931 Chevrolet; that he measured the height of the front fender; that the height of the front fender of the 1930 and 1931 Chevrolet was the same or approximately the same; that height depended on the tire size and whether the tires were up or flat. One of the witnesses quoted the man (Tudor) as saying he did not want to buy the car; that he was on a jury and wanted to measure it. The juror inquired whether it was the same height as the 1930 Chevrolet and was advised that it was approximately the same. This witness said the man (Tudor) had a carpenter's folding rule partly open. On cross-examination, the witness said he did not actually see the measurements of the fender made.

Another witness from another used car lot testified that at about 8:30 A. M., on the date shown by the record as the last day of the trial, a man, whom he recognized as the person in court (Tudor), came to his place of business and advised him that he was on a jury and wanted to see and measure a 1930 Chevrolet, but witness did not have one; that Tudor said he wanted to find the difference in height

from the ground of a 1930 and 1931 Chevrolet. The affidavits of these three witnesses had been filed and were also offered in evidence. Defendant further offered the affidavit of one Smith as to measurements of street cars passing Fifteenth and Oak streets near the time fixed by Mr. Tudor, when the measurements of the street car were made by him. According to this witness, the front bumper on the cars passing that point about that time varied from 19½ to 24½ inches above the pavement, and the height of the side of the street cars varied from 29½ to 33½ inches above the pavement. According to his affidavit, none of the 14 cars passing that point at that time were of the same series as the street car involved in the collision. Plaintiff further offered the affidavit of one Spurrier who interviewed Mr. Tudor, after the verdict was filed, and took his affidavit concerning his conduct.

In rebuttal, in addition to the affidavit of juror Tudor to the effect that he was not influenced by the measurements he made, plaintiff offered the affidavits of nine jurors, all on the same general form and to the same effect, that immediately after retiring to the jury room to deliberate on a verdict the jury, without discussing any of the evidence, voted by ballot, ten favorable to plaintiff; that the verdict was based solely on the evidence adduced in the trial; that only the measurements brought out in evidence were taken into consideration by the jury; that the verdict was based on that evidence; that, if any mention was made during the deliberations of the jury of measurements of any street car or automobile not mentioned in evidence, such measurements were not taken into consideration and did not influence the jury in arriving at a verdict.

At the opening of the hearing on the motion, plaintiff's counsel moved to strike out the affidavit of juror Tudor, on the ground that it tended to impeach the verdict, and the affidavit of the witness Spurrier, on the ground that it was irrelevant and immaterial and concerned statements and conversations of a juror made after the verdict. The court said: "Let me suggest that you make your motion to strike after we have heard the testimony, and then you can present the whole thing on the law . . . I will withhold my ruling on that now." When the affidavits were offered, plaintiff's counsel objected to the affidavit of juror Tudor as an attempt to use the affidavit of a juror to impeach his verdict. Counsel also objected to the other affidavits as containing hearsay and statements made by juror Tudor. Counsel further said: "I object further to the affidavit of any person that deals with any statement of this juror, and also with the conduct of the juror." The court said: "Let's get all the evidence in first." When counsel started to read the affidavit of juror Tudor, counsel objected to its introduction and the court said: "I will reserve the ruling on that." When the several witnesses from the used car lots were being examined, plaintiff's

counsel objected to testimony concerning any conversations with the juror and to any statement made by the juror. It was contended that any statement by a juror was incompetent for the purposes of the motion. Defendant's counsel stated that the conversations were offered not for the truth of the statements, but to explain the juror's acts.

In ruling objections by plaintiff's counsel to statements of juror Tudor, the court further said: "I will hear the testimony, and then pass upon the admissibility of the testimony with the case . . . it will all be excluded if I have then the same view I have now." No exceptions were saved by respondent and, at the close of the hearing, no ruling on the disputed evidence was made; no request was made for a ruling and no motion to strike was made. The court found as follows: "I think you have shown that there was misconduct on the part of a juror, but there is no showing that that influenced the verdict. I am going to overrule the motion for a new trial." The motion was overruled.

 The record, therefore, shows an affirmative finding by the court that there was misconduct on the part of a juror. All of the evidence was received by the court and, on this appeal, we are not called upon to rule errors in the admission or rejection of evidence. It is enough to say that there was sufficient competent evidence in the record to show that, while the case was being heard, the juror, who later signed the verdict as foreman, was not seeking independent evidence on an issue of fact in the case; that he was carrying a carpenter's folding rule; that he did, in fact, measure the fender of a 1931 Chevrolet and ascertain that it was approximately the same height as a 1930 Chevrolet. The finding further shows that the court, although finding that misconduct was shown, found that defendant had not further shown that such misconduct influenced the verdict. There was no finding by the court that the misconduct shown did not influence the verdict, nor that defendant was not prejudiced thereby, unless such may be inferred, under the circumstances here, from the fact that the court overruled the motion.

Respondent contends that the court did not believe appellant's witnesses and, therefore, properly overruled appellant's claim of misconduct by juror Tudor, and that "the court's finding of no prejudice from a mere technical violation was a finding of fact which is conclusive." The record, however, shows that the court found misconduct was established, but held there was *no showing* that the misconduct influenced the verdict. Appellant says the record shows error of law in ruling the motion, because the court affirmatively found that misconduct was established and still placed the burden on defendant to show that the misconduct established influenced the verdict and that prejudice resulted. Respondent says the burden was on appellant to show prejudice by the misconduct; that a defendant,

in such case, must show the misconduct and that such misconduct influenced the verdict to defendant's prejudice. It is a familiar rule that the allegations of a motion for a new trial do not prove themselves and must be supported by proof. [Sennert v. McKay (Mo.), 56 S. W. (2d) 105, 109.] But appellant sustained that burden by establishing to the trial court's satisfaction that the juror, who signed the verdict as foreman, was guilty of affirmative misconduct, in that after he had been sworn to try the case on the evidence adduced at the trial and after he had been advised that he must render a verdict solely on that evidence, he was out seeking, and did secure, independent evidence upon which to base a verdict. Such conduct has been termed reprehensible conduct. [Evans v. Klusmeyer, 101 Mo. 352, 363, 256 S. W. 1036, 1039.] We think the conduct shown, evidencing a disposition not to be governed by the evidence adduced in court, was such that prejudice to defendant, the losing party, must be presumed. A prima facie case was made. [Floody v. Great Northern Ry. Co., 102 Minn. 81, 88, 112 N. W. 875, 878; Kelley v. Adams County, 113 Neb. 377, 203 N. W. 544, 545.] "It is presumed that error is harmful, unless it is clearly shown to be otherwise." [State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S. W. (2d) 667, 669; Amsinger v. Najim, 335 Mo. 528, 73 S. W. (2d) 214, 216 (5); Aronovitz v. Arky (Mo.), 219 S. W. 620, 624; Conaghan v. Dean (Mo. App.), 96 S. W. (2d) 924, 926.] The burden of evidence shifted to plaintiff to show that there was in fact no prejudice to defendant. This burden of evidence the plaintiff in fact assumed. She offered in support of the verdict the affidavits of certain jurors.

Respondent cites the case of Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S. W. (2d) 47, 52. That case involved a question of misconduct of a jury. This court said: "There is no showing whatever that the remarks of the nameless stranger influenced the verdict of the jury." But in that case there was no competent evidence of misconduct, or even of the remarks, because of the rule against a juror impeaching his verdict.

Other cases cited, involving misconduct of jurors, may be grouped under the following heads: (1) Where, because of the well founded rule that the testimony of a juror will not be received for the purpose of impeaching the verdict of a jury, there was no competent evidence of misconduct on the part of the jury (that is, no competent evidence by reason of the incompetency of a juror to give such evidence as was offered). [Woehler v. City of St. Louis, 342 Mo. 237, 114 S. W. (2d) 985, 987; Evans v. Klusmeyer, supra; Easley ▮▮▮ v. Mo. Pac. Ry. Co., 113 Mo. 236, 247, 20 S. W. 1073, 1075; State v. Gabriel, 342 Mo. 519, 116 S. W. (2d) 75, 79; Winters v. Hassenbusch (Mo. App.), 89 S. W. (2d) 546, 552; Bank of Malden v. Stokes, 220 Mo. App. 131, 280 S. W. 1055, 1057.] (2) Where there was no substantial evidence of real misconduct. [Sennert v. McKay, supra; Thompson

v. City of Lamar, 322 Mo. 514, 17 S. W. (2d) 960, 976; Turnbow v. Kansas City Rys. Co., 277 Mo. 644, 211 S. W. 41, 43; Wilkerson v. City of Sedalia (Mo. App.), 205 S. W. 877, 880.] (3) Where from conflicting evidence there was a finding by the trial court that there was no misconduct. Finer v. Nichols, 175 Mo. App. 525, 542, 157 S. W. 1023; Dysart-Cook Mule Co. v. Reed & Heckenlively, 114 Mo. App. 296, 307, 89 S. W. 591; (4) Where there was an admission of, or finding of, misconduct of a juror but also a finding by the trial court, express or implied, that no prejudice resulted from the alleged misconduct. Consolidated School District No. 3 of Grain Valley v. West Missouri Power Co., 329 Mo. 690, 46 S. W. (2d) 174, 180; Hoffman v. Dunham (Mo. App.), 202 S. W. 429, 431; (5) Where, if there was any evidence of misconduct, there was no evidence that the jurors obtained any new, different or conflicting evidence and on appeal it was held that the trial court did not abuse its discretion in overruling the motion for a new trial. [Turnbow v. Kansas City Ry. Co., supra (211 S. W. 41, 43); Consolidated School District No. 3 of Grain Valley v. West Missouri Power Co., supra (46 S. W. (2d) 174, 180); Wilkerson v. City of Sedalia, supra (205 S. W. 877, 880); Winters v. Hassenbusch, supra (89 S. W. (2d) 546, 552); Hoffman v. Dunham, supra (202 S. W. 429, 431); Dysart-Cook Mule Co. v. Reed & Heckenlively, supra (114 Mo. App. 296, 305).] In some of these cases, in determining the question of abuse of discretion, the appellate court said that it was unable to see wherein appellant's interest could in the least have been prejudiced by the conduct of the juror. In the case of State v. Williams, 335 Mo. 234, 71 S. W. (2d) 732, 735, cited by respondent, the court said: "We hold that the facts in evidence affirmatively show that the appellant was in no way prejudiced by the fact that Winningham passed through the jury room while the jury was deliberating. That the evidence overcame the presumption of improper influence by the fact that a stranger was in the jury room. The State sustained the burden to overcome the presumption of improper influence and that the appellant was in no way prejudiced."

We think the record in the present case affirmatively shows the trial court did not exercise a sound judicial discretion in ruling the motion. In overruling the motion for a new trial, the trial court did not expressly or by implication determine prejudice or no prejudice to defendant on account of the proven misconduct of the juror, because the record shows the court ruled the motion upon the theory that the burden remained upon defendant to show that the established misconduct of the juror influenced the verdict, even though the misconduct was established and it was such misconduct that prejudice would be presumed. Although defendant had made a prima facie case of prejdice, the trial court did not rule that no prejudice resulted, but instead based its ruling on the theory that there must also be a

showing the misconduct influenced the verdict. The court should have expressly determined the question of prejudice to defendant, or should have ruled the question as to whether or not the misconduct shown influenced the verdict. Since it did not do so, either expressly or by necessary implication, but placed its decision on other grounds, it cannot be said that the order overruling the motion represents the exercise of such a sound judicial discretion that it should not be disturbed on appeal.

We think this case may be distinguished from the cases listed above, under subdivision 5, because in those cases there was nothing to show that the trial court, in ruling the motions, did not exercise a sound judicial discretion and expressly or by implication determine judicially the question of prejudice or no prejudice resulting from the misconduct shown. In addition, the jurors mentioned in those cases did not exhibit the same degree of interest, intent and purpose to get independent evidence by measurements on an issue in the case, as was exhibited in this case. Here the juror was actively seeking independent information apparently for the purpose of enabling him to arrive at a verdict. His conduct discloses an affirmative purpose to reject the evidence in the record and get information outside the record. He was in possession of a folding carpenter's rule, visited at least two used car lots, made inquiries, secured information and measured the height of a 1931 Chevrolet fender. Prima facie such conduct must be presumed to have influenced the verdict to the prejudice of the defendant. There was, prima facie, a showing of prejudice. The case is not one, of which it can be said, the trial court in the exercise of a sound judicial discretion, by implication, determined that the misconduct shown did not influence the verdict and that defendant was not prejudiced by the misconduct. On the other hand, it affirmatively appears from the record that the trial court acted upon a misconception of the law. The cases cited, therefore, are not controlling here since error of law appears on the face of the record. Under the circumstances shown by the record the court erred in overruling defendant's motion for a new trial.

It is insisted, however, that the facts upon which the trial court ruled the motion are fully set forth in the record; that from an examination of the record we may determine that it affirmatively appears that defendant was not prejudiced. Ullom v. Griffith (Mo. App.), 263 S. W. 876, 880. It is insisted that, although the juror was seeking evidence outside the record, it was not shown that he found anything contrary to the evidence of defendant; that if he measured a 1931 Chevrolet, we cannot assume that he measured it incorrectly or got a different result from defendant's measurements, since on the evidence the height of fenders on a 1930 and 1931 Chevrolet were approximately the same; and that there was no evidence the juror had taken sides in the controversy or did more than seek and confirm

defendant's evidence. The record does disclose the type of misconduct and of what it consisted. The court found that misconduct was established. There was evidence, also, in support of the verdict, that the measurements made by the juror did not influence his verdict. The affidavits of other jurors were to the effect that any such measurements were not taken into consideration and that only the evidence in the record was considered by the jury in their deliberations. We think these affidavits had little probative value because of the common tendency of jurors to minimize the effect of misconduct. [State v. Malone, 333 Mo. 594, 62 S. W. (2d) 909, 914; Ullom v. Griffith, supra (263 S. W. 876, 880).]

Respondent insists that upon the whole record the trial court did not abuse its discretion and that we can say that no prejudice resulted. Of course, if from the facts in the record, this court on appeal can affirmatively say that no prejudice resulted to defendant from the misconduct shown, a reversal might be unnecessary, even though it appears that the trial court did not exercise a sound judicial discretion or rule the motion on its merits, as to prejudice or no prejudice, because of the error of law. In the Williams, Turnbow and Wilkerson cases cited, supra, the trial court had, so far as the record shows, exercised a sound judicial discretion in overruling the motion for a new trial. It was held that the trial court did not abuse its discretion. Those cases are not applicable here since it appears the trial court did not, in overruling the motion, determine that the verdict was not influenced by the misconduct and that defendant was not prejudiced.

In this case a verdict for $10,000, signed by juror Tudor as foreman, was returned against the defendant. The only evidence in the record to overcome the prima facie case of influence and prejudice was the affidavits of the jurors themselves, which affidavits, as we have seen, have little probative value. In addition nine of the affidavits are written in the same form. Defendant was entitled to have its case tried by twelve impartial jurors (Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S. W. (2d) 695, 698); and to have a fair trial upon the evidence produced in court. In this case, the acts and conduct of juror Tudor definitely cast a shadow over the verdict. We cannot say, nor do we believe he could properly say that his own interest, investigation, and measurements, admittedly made, did not influence his verdict. The affidavits of the other jurors do not say they did not learn of such measurements as made by juror Tudor, but state "that if any mention was made . . . of measurements . . . not mentioned in the evidence . . . such measurements, if any were mentioned, were not taken into consideration."

We are unable to say from the whole record that the active interest and evident attitude of juror Tudor, and his independent search for and acquisition of facts outside of the record, did not influence the

verdict or that defendant was not prejudiced by the misconduct of this juror. [See, Schneider v. Moe (Ore. Sup.), 50 Pac. (2d) 577, 578.] It is unnecessary to pass upon other assignments of error.

The judgment is reversed and the cause remanded. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.