383 F.Supp. 315 (1974)
STANLEY CONSULTANTS, INC., Plaintiff,
v.
H. KALICAK CONSTRUCTION COMPANY, Defendant.
No. 72 C 421 (3).
United States District Court, E. D. Missouri, E. D.
September 25, 1974.
*316 Thomas L. Croft, Coburn, Croft, Shepherd & Herzog, St. Louis, Mo., for plaintiff.
Norman A. Selner, Clayton, Mo., for defendant.

*317 MEMORANDUM
WANGELIN, District Judge.
This action is before the Court for a decision on the merits following the trial to the Court sitting without a jury.
Plaintiff, Stanley Consultants, Inc., (herein STANLEY) brought this action alleging non-payment of a contractual debt against the defendant, H. Kalicak Construction Co., (herein KALICAK). The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

Findings of Fact
1. This Court has jurisdiction over the subject matter of this suit and the parties hereto pursuant to 28 U.S.C. § 1332.
2. On July 22, 1969 STANLEY and KALICAK entered into a written contract in which STANLEY agreed to perform professional planning, architectural and engineering services for development of a 61 unit housing project in Kinshasa, Zaire.
3. Article I of the contract provided that STANLEY was to design a 61 unit housing project in Kinshasa, Zaire, consisting of apartments, three and four bedroom residences, clubhouse, swimming pool, commissary building, two tennis courts and a volley ball court. Article II provided that STANLEY was to provide schematic layouts of each structure, preliminary plans in the form of advanced construction drawings, topographical survey, minimum soils investigations, master site plans, detail plans and specifications, contract documents, and a cost estimate of the project. Article III excluded property surveys for land or right-of-way acquisition. Article VI, Sections B. and C., provided that KALICAK could suspend all or any part of STANLEY's service by giving written notice, and that upon termination of the agreement, STANLEY must be paid in full for all services rendered prior to the termination. Article V provided that STANLEY's fees were based on sums expressly fixed in Article II of the contract.
4. By December 13, 1969 the scope of the project contracted for between the parties had been expanded to 255 housing units and other ancillary structures.
5. On December 13, 1969 STANLEY furnished to KALICAK a detailed cost estimate that the expanded project of 255 housing units would have a total cost estimate of $7,988,000.00. This estimate included land, professional fees and contingencies as well as construction costs.
6. On the basis of this estimate KALICAK and STANLEY entered into an amendatory agreement on December 29, 1969, which memorialized the expanded scope of the project, expanded fees of the project and called for a cost estimate.
7. The cost estimate called for in the amendatory agreement of December 29th was delivered to KALICAK on January 29, 1970 and places a cost for building the project of $8,934,000.00 including 20% for contractor's overhead.
8. On January 20, 1970 STANLEY completed a set of drawings of the project. These drawings were sent to Overseas Construction Company (herein OCC) and used by them to formulate their bid which was dated February 20, 1970. Overseas Construction Company was invited to bid upon the recommendation of STANLEY.
9. The OCC proposal exceeded STANLEY's cost estimate by roughly 100%.
10. The cost estimates of STANLEY were prepared with little or no market data from the Kinshasa area. Such data was readily available in Kinshasa if STANLEY had sought it out. STANLEY's estimations in some cases are one-third or one-fourth of the market cost at the time in Kinshasa.
11. STANLEY should have been reasonably able to estimate costs to within a 20% to 25% error. STANLEY stated *318 through its agent at trial that STANLEY would have been satisfied if the estimates had been within 20% to 25% of the bid and that STANLEY could not recommend the acceptance of the bid.
12. The plans produced by STANLEY which were submitted to OCC for bidding purposes had numerous errors, for example, driveways with impassable grades, tremendous differences in elevation between the houses at floor level and the actual ground level, sewer lines that ran as much as 20 feet above ground although supporting structures were designed to be only 8 feet in height, a sewer line crossing a river at 50 feet elevation with no design for supporting structures, grossly inadequate stormwater drain systems, and a water supply system specifying a 60 pounds per square inch design load but which if built as drawn would have generated 174 pounds per square inch load. STANLEY's design also showed that numerous structures designed by STANLEY fell outside the subject property and that boundary errors in a range of 30 to 750 feet existed in the plan supplied. In its plans STANLEY also neglected to show the reservation of an easement which allowed access to a religious shrine on the property and placed structures in its plans so that the structures encroached upon the reserved area of the shrine.
13. STANLEY proceeded with further design of the project, however, no further bids were solicited by STANLEY.
14. STANLEY billed KALICAK on August 15, 1969; September 30, 1969; December 19, 1969; January 2, 1970; March 7, 1970; April 18, 1970; May 7, 1970; and June 9, 1970. KALICAK paid the August 15th and September 20th invoices on November 16, 1969. These invoices were for a total of $18,890.08. On July 23, 1970 KALICAK wrote to STANLEY stating that he no longer intended to develop the project and that he was unhappy about the disparity between STANLEY's cost estimate and the OCC proposal.
15. KALICAK refused to pay any later invoices which STANLEY submitted to him, and STANLEY then brought this action to enforce payment.

Conclusions of Law
The first issue herein involves whether an architect is precluded from recovering from his services where the cost of the project was greatly in excess of the amount contemplated by the owner. The evidence is clear that STANLEY represented to KALICAK that the proposed project in Kinshasa would cost approximately $8,000,000. The only bid submitted by OCC indicated that the project would cost approximately $16,000,000 or an error of almost 100% in the prior estimate given by STANLEY. It is quite obvious that KALICAK relied on STANLEY's assertion concerning the cost of the project. The product bargained for between the parties was not just a project of a given physical size but also of a given monetary size. The monetary size of the project was the key to its funding, and to its desirability as a business venture for KALICAK. This desirability is a key factor in the apparent mutual assent between STANLEY and KALICAK.
The general rule of law is that where the architect and owner specifically agree that the bid or cost shall not exceed a certain amount, the architect may be denied compensation if the bid or cost substantially exceeds the amount agreed upon. Campbell v. Evens & Howard Sewer Pipe Company, 286 S.W. 2d 399, 400 (Mo.Ct. of Appeals, 1956).
This Court as the trier of fact and from a close examination of the evidence presented to it comes to the conclusion that STANLEY and KALICAK had come to an agreement that the project would be developed only if the cost of the project was within a reasonable variation from STANLEY's original estimate of approximately $8,000,000. Thus, from that evidentiary viewpoint it becomes quite apparent that STANLEY's assertion that the project *319 would cost approximately $8,000,000 and the later bid of OCC of $16,000,000 is such a grievous error that STANLEY should be denied compensation.
Even if the evidence were to show that there was no apparent mutual assent concerning a projected price for the Kinshasa project, which is clearly not the case, the law in Missouri would preclude STANLEY's recovery.
The law in Missouri is that even where there is no evidence that there has been an understanding concerning the cost of a structure or that the cost of the structure should be limited, the owners may in good faith reject the plans as unsatisfactory if the cost of construction in conformance with the completed plans proves to be too great. In such a case the architect has been denied compensation for his efforts. Cann v. Church of the Redeemer, 111 Mo.App. 164, 85 S.W. 994 (1905).
The numerous exhibits in large amounts of expert testimony presented to this Court during the trial which this Court has carefully examined shows that STANLEY would also be barred from any further recovery from KALICAK due to STANLEY's gross negligence in preparing the plans which were sent to OCC for bidding purposes.
An architect is required to furnish plans and specifications prepared with a reasonable degree of technical skill which would produce, if followed, a building without marked defects. 6 C.J.S. Architects § 19, page 317. Such plans are not required to be perfect, the architect is liable only for his failure to exercise reasonable skill in their preparation. Dysart-Cook Mule Company v. Reed and Heckenlively, 114 Mo. App. 296, 89 S.W. 591 (1905); 5 Am. Jur.2d, Architects § 8, page 670.
Plaintiff also committed errors such as giving compass bearings which did not exist for road directions within the project and allowing many parts of buildings to extend over the boundaries of the project. Even though the contract between the parties allowed or had a provision for no surveys, there was substantial testimony that indicated that an architect exercising reasonable care would have surveyed the site to establish building location. For plans which were sent to a contractor for the purposes of bidding the errors are so grievous as to appear to any eye that they were negligently prepared. According to the above-cited legal authority STANLEY should be denied any recovery for its services due to such negligence.
It is quite obvious even to this Court's non-expert eye that STANLEY's drawings submitted to OCC for bids were grossly negligent. Some of the items in deficiency have been noted in Finding of Fact No. 12. These errors produced driveways which were impossible for any vehicle produced to climb, a sewer system that would not stand the pressures subjected to it when it was in operation, and gross errors in the amount of grading and leveling required for the project to be built. STANLEY's trial brief attempts in numerous detail to show that these items were corrected in later drawings developed by STANLEY. These corrective items will not be considered by this Court since they were not introduced into evidence at the trial and STANLEY had ample opportunity to show that the errors might have been corrected. Such attempts to introduce testimony or evidence after trial are not looked upon with favor by this Court.
The general rule of law is that a party who has substantially complied with his contract is entitled to recover the contract price, with deductions for any defects or incompletions. Hansen Lumber Company v. De Moss, 253 Iowa 204, 111 N.W.2d 681 (1961); Talbot-Quevreaux Construction Co. v. Tandy, 260 S.W.2d 314 (Mo.App.1953).
KALICAK has the burden of establishing an affirmative defense in such a case. Talbot-Quevreaux Construction Co. v. Tandy, supra. It is quite clear from the evidence presented *320 to this Court that KALICAK has such a defense due to the negligent planning shown by STANLEY.
STANLEY has expended considerable amount of work on the project from which this litigation arises and KALICAK has paid STANLEY approximately $18,000. Applying the previously stated rule, it is apparent that STANLEY, considering the quality of its work, has received just compensation, therefore, judgment shall be entered for KALICAK.