**Harry G. ROWE, Plaintiff-Appellant,**

v.

**Donald R. MOSS and Eileen Pryor Moss, Defendants-Respondents.**

**No. 12914.**

Missouri Court of Appeals,
Southern District.
Division Two.

Aug. 12, 1983.

JoAnne Spears Jackson, West Plains, for plaintiff-appellant.

H. Lynn Henry, West Plains, for defendants-respondents.

PREWITT, Judge.

Plaintiff, a licensed architect, sought to recover a fee for preparing house plans and specifications for defendants. Defendants' answer stated that plaintiff was not entitled to recover because he was negligent in several particulars in preparing the plans, including failing "to make proper provisions to allow for the placement of a wood-burning furnace in the basement area". Defendants also counterclaimed, seeking damages for this as well as other alleged deficiencies in the plans, contending that plaintiff "prepared plans and specifications which placed the basement in an improper position making it impossible to install a wood-burning furnace to be connected with the existing chimney". Defendants asserted that this failure damaged them because "the house is not as energy efficient and the fair market value of the house is substantially less than the fair market value of the same house with a wood-burning furnace".

The trial court, sitting without a jury, entered judgment in favor of plaintiff on his petition for $1,060, the amount sought. It found for defendants on their counterclaim, finding that plaintiff knew that defendants wanted to install a wood furnace in their basement and plaintiff owed defendants "a duty to inform them that they either had to move their basement or abandon a wood furnace in their plans" and plaintiff breached that duty, resulting in damages to the defendants. Defendants were awarded damages of $4,000, resulting in them being entitled to receive $2,940 from plaintiff. Plaintiff appeals.

We first discuss plaintiff's contention that the trial court erred in determining that he had a duty to inform the defendants that the location of the basement had to be moved or they had to abandon their plans for a wood furnace because that ruling held plaintiff to a higher standard of technical skill in the preparation of building plans and specifications than the reasonable degree of skill which is required of architects. Plaintiff contends that as he located the basement of the house exactly where defendants wished him to locate it and as he did not agree with them to design a heating system, he had no duty to inform them how the heating system should be located or constructed.

Defendants testified that before consulting plaintiff they had decided they wanted a wood-burning furnace in the basement of the house. Defendant Eileen Moss initially contacted plaintiff regarding drawing the plans and said that on her first visit to his office she gave him a brochure describing the wood-burning furnace they wanted. She also informed him they wanted "a small storage basement for the furnace, hot water tank, where we could put the freezer down there and have storage", and told him what rooms they wanted it under. The basement is approximately one-third the size of the floor above it and it was shown

on the plans, as defendants wished, under the kitchen, an office area and a bathroom. Defendants selected the location because they thought it was a "logical place" for the basement's location.

All parties testified that there was never any discussion or other communication between plaintiff and defendants regarding having to change the location of the basement so a wood-burning furnace might be installed. In his file plaintiff had a brochure on a wood-burning furnace and he testified that defendant Eileen Moss "probably did indicate that she wanted to put in a wood furnace in the house." Plaintiff did not supervise the construction. He was at the site where the house was to be once before he prepared his final plans for defendants. Shortly after receiving the final plans from plaintiff, defendants commenced construction of the house.

Dennis Coulter, an operator of a heating and cooling business, testified that when he first went to the building site the basement and foundation had been constructed and there was sheeting on the floor. While there he determined that a wood furnace could not be installed in the house because the flue would have to run horizontally and that is not safe with a wood furnace. He so informed defendants and a propane furnace was installed in the house. Defendants testified that until Coulter came to the construction site they did not know that they could not have a wood-burning furnace. Eileen Moss testified that she has since learned that the basement should have been centrally located to have lined up with the fireplace flue.

Defendant Donald Moss testified without objection that Coulter told him that a wood furnace could not be installed because there was between 20 and 22 feet from where the furnace would have to be located in the basement to the fireplace flue. He said that Coulter informed him it would not be safe because "a wood furnace had to be within about three feet of the chimney to be functional, that the long horizontal space that smoke had to go would cool and coal tar and creosote settle out and cool out of it

and run back into the furnace and cause a fire." Mr. Moss also testified that it was impossible to install a wood-burning furnace after the basement walls and the basement foundation walls were in. He said it would not have been possible to have installed a separate flue and put in a wood heating system without "putting additional footings in to support it. We would have had to go through—take out the basement floor and put in additional footings."

An architect, testifying as an expert witness for defendants, said that a wood furnace should be close to the flue and that he would have advised defendants that either the basement had to be located below or adjacent to the flues or that they were not going to be able to install a wood-burning furnace there. He said that "the architect should have told them that wood furnaces or the basement needed to be situated such that the wood furnace would be closer to the flues." He stated that it would be an architect's duty to tell defendants that they were either going to have to move the basement or not have a wood-burning furnace.

An architect holds himself out as being skilled in the science of constructing buildings. 6 C.J.S. Architects § 27, p. 490; Annot., Responsibility of one acting as architect for defects or insufficiency of work attributable to plans, 25 A.L.R.2d 1085, 1086 (1952). "In lay person's terms, a property owner tells an architect basically what kind of structure is desired, and the architect takes it from there, designing the specifications which are later used by engineers and builders." *Waddington v. Wick,* 652 S.W.2d 147, 150 (Mo.App.1983).

An architect is required to furnish plans prepared with a reasonable degree of technical skill. *Stanley Consultants, Inc. v. H. Kalicak Construction Company,* 383 F.Supp. 315, 319 (E.D.Mo.1974). See also, *Dysart-Cook Mule Co. v. Reed & Heckenlively,* 114 Mo.App. 296, 89 S.W. 591 (1905). An architect owes a duty to those employing him essentially the same as that which is owed by any person to another where such person holds himself out as possessing

skill and ability in some special employment. 5 Am.Jur.2d, Architects, § 8, p. 670. The plans drawn by an architect are tested by the ordinary and reasonable skill usually exercised by one in that profession. Annot., supra, 25 A.L.R.2d at 1088.

■ The evidence is undisputed that defendants informed plaintiff that they wanted a wood-burning furnace. They must have expected him to provide plans where such a furnace could be installed or else they would not have discussed the furnace with him and have given him the brochure about it. They said they were relying on him as a professional to do so. They could expect to receive, not only a set of professionally designed plans, but plans that would achieve their desired house, or to be advised that what they had informed him they wanted would not work without changes. When the client of an architect advises him of construction goals that are incompatible, we believe that the architect, as one skilled in construction, has an obligation to advise the client that both could not be accomplished. This was basically what defendants' expert witness testified to. Of course, the final decision as to the basement's location would be defendants, but after having consulted professional help, they should have been advised of the consequences of leaving the basement where they originally wanted it. They indicated that if they had known they could not have the furnace as the basement was located they would have moved the basement.

■ If plaintiff had no knowledge regarding the proper location of such a furnace, he should have acquired it or have advised defendants that he was providing no opinion as to its location and was disclaiming any responsibility for whether it could be installed under his plans. Under our review we cannot say that the trial court erred in finding that plaintiff had a duty to inform defendants that they either had to move the location of the basement or not have a wood-burning furnace. This point is denied.

■ Defendants contend that as plaintiff failed to raise his remaining two points in his motion for new trial, they are not preserved for appellate review. That is not correct. In a nonjury case a motion for new trial is not necessary to preserve contentions for review and an appellant may raise on appeal points not mentioned in the motion. *Stevenson v. Stevenson,* 618 S.W.2d ·715, 717 (Mo.App.1981); *Monia v. Oberle,* 530 S.W.2d 452, 454 (Mo.App.1975).

■ We next consider plaintiff's contention that error was committed when the judge who initially set this case for trial sustained defendants' motion for change of judge and another judge was assigned to try the matter. Plaintiff contends that defendants' motion should have been denied because it was not timely filed. It was filed 29 days before the trial date. Under Rule 51.05(b), it should have been filed at least 30 days before then. However, just as a party is not entitled to any particular jurors, *State v. Parris,* 506 S.W.2d 345, 346 (Mo.1974), plaintiff is not entitled to a particular judge. Even when a party is not entitled to a change of judge, if a judge at the suggestion of that party, or on his own motion disqualifies himself, there is no reversible error. See *State v. Euell,* 583 S.W.2d 173, 174 (Mo. banc 1979). Apparently this is because no prejudice can be shown. An appellate court does not reverse a judgment unless error was committed by the trial court against the appellant materially affecting the merits of the action. Rule 84.13(b). *This point is denied.*

Plaintiff's final contention is that the trial court erred in allowing the testimony of an expert witness, and erred in basing its assessment of defendants' damages on that testimony, because the witness did not appraise defendants' house in accordance with any standard appraisal approach recognized by Missouri law and based her assessment of the damage sustained by defendants on opinion and not on fact.

There appears to be two rules as to the measure of damages when an architect is liable for submitting defective plans. One, where the defect may be corrected without

unreasonable expense, is that the damages are measured by the costs of remedying it. The other is that the measure of damages is the difference between the value of the building, as designed and built, and the value it would have had if it had been properly designed and constructed. 5 Am. Jur.2d, Architects, § 24, pp. 687–688; 6 C.J.S. Architects § 51, pp. 520–521; Annot., supra, 25 A.L.R.2d at 1100. Defendants' evidence was based upon the latter rule, and plaintiff does not contend that any other measure of damages should be applied.

The expert testified that on a one-acre lot the house as presently constructed would be worth $100,852 and with a wood furnace would be worth $105,852. She testified that defendants' house, separate from the real estate that it was located on, was worth $95,852 and a wood furnace would have increased its value to $99,000 or $100,000. She based her opinion at least in part on the cost of wood fuel as compared to other types of fuel available in the area and on her experience in the sale of residences.

While it appears to us that the witness did follow recognized methods of appraisal, whether she did makes no difference here. Thus, we will not lengthen this opinion by discussing the various "recognized" methods of appraisal usually used, as plaintiff's brief acknowledges, in condemnation cases. The expert testified that whatever the value of the house, a wood furnace makes a house easier to sell and increases its value four to five thousand dollars, at least where located in an area where, as here, wood was abundant and its price reasonable. There was no contrary evidence. Whether it would have cost more or less to install a wood-burning furnace than the furnace installed, the record does not disclose, but no questions are raised regarding that.

■ Plaintiff also questions the qualifications of the expert to testify as she did. The qualification of an expert witness rests in the sound discretion of the trial court. *Randolph v. USF & G Companies*, 626 S.W.2d 418, 421 (Mo.App.1981). The witness was a licensed real estate broker and had training and extensive experience in the sale of residences in the area where defendants' house was located. Allowing the witness here to testify as an expert was not an abuse of the trial court's discretion. See *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.*, 381 S.W.2d 20, 23–25 (Mo.App.1964). See also, *State ex rel. State Highway Commission v. Riss*, 432 S.W.2d 193, 198–199 (Mo.1968).

■ We have some skepticism as to the expert's testimony because due to the inconvenience of the use of wood, many persons may not want a wood-burning furnace. This is a feature that some people might pay extra for and some would not and might offer less for. However, there was no other evidence on this issue and we conclude that the trial court was justified in finding, based on the evidence presented, that such a furnace would create a $4,000 increase in value to the house. We find no abuse of discretion in the trial court allowing the expert's testimony and in its assessment of damages apparently based on that testimony.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.